# Exhibit A

STATE OF NORTH CAROLINA

COUNTY OF BLADEN

FILED IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
2016 JAN -8 P 12: 30
16 CVS _____
BLADEN COUNTY C.S.C.
BY _____

CYBERNET LLC; and ALADDIN REAL
ESTATE, LLC,

       Plaintiffs,

v.

JONATHAN DAVID, in his personal capacity
and his official capacity as District Attorney for
the 13th Prosecutorial District of North
Carolina; JAMES McVICKER, in his personal
capacity and his official capacity as Sheriff of
Bladen County, North Carolina; and TRAVIS
DEAVER, in his personal capacity and his
official capacity as a Deputy Sheriff of Bladen
County, North Carolina,

       Defendants.

**VERIFIED COMPLAINT**
**(Jury Trial Demanded)**

Plaintiffs Cybernet LLC ("Cybernet") and Aladdin Real Estate, LLC ("Aladdin," and

together with Cybernet, the "Plaintiffs") complaining of the Defendants state as follows:

## PARTIES

    1.    Plaintiff Cybernet is a limited liability company organized and existing under the

laws of the State of North Carolina with its principal place of business located in Bladen County,

North Carolina.

    2.    Plaintiff Aladdin is a limited liability company organized and existing under the

laws of the State of North Carolina with its principal place of business located in Bladen County,

North Carolina.

3.     Defendant Jonathan David is the duly elected District Attorney for the 13th Prosecutorial District of North Carolina, which includes within its jurisdiction the County of Bladen (the "District Attorney").

4.     Defendant James McVicker is the duly elected Sheriff for Bladen County pursuant to Article VII, § 2 of the North Carolina Constitution (the "Sheriff").

5.     Upon information and belief, Defendant Travis Deaver ("Deputy Deaver") is a Deputy Sheriff in the Bladen County Sheriff's Office, and reports to and is supervised by the Sheriff.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action pursuant to N.C. Gen. Stat. §§ 7A-240 and 7A-245(a)(4).

7.     This Court has personal jurisdiction over the Defendants pursuant to N.C. Gen. Stat. § 1-75.4.

8.     Venue is proper in Bladen County pursuant to N.C. Gen. Stat. §§ 1-77 or 1-82.

## FACTUAL ALLEGATIONS

9.     Cybernet operates two retail stores in Dublin, North Carolina, one of which is located at 29 Third Street ("Store 1").

10.     Cybernet's other retail store is located across the street from Store 1 at 34 Third Street ("Store 2").

11.     Cybernet uses lawful sweepstakes and other lawful promotions to enhance the sale of products at Store 1 and Store 2.

12.     Cybernet leases the space for Store 1 and Store 2 from Aladdin, which owns the buildings where those stores are located.

13.     Cybernet is owned solely by Holly Smith.

14.     Aladdin is owned solely by Jeffrey Smith.

15.     On or about May 29, 2015, Store 1 and Store 2 simultaneously were raided under the joint direction and supervision of the District Attorney and Sheriff (the "Raids").

16.     The Raids were performed pursuant to a pair of nearly identical search warrants issued by the Honorable James F. Ammons, Jr. on or about May 28, 2015.

17.     A true and correct copy of the warrant relating to Store 1 (the "Store 1 Warrant") is attached hereto as Exhibit A, and incorporated herein by reference.

18.     A true and correct copy of the warrant relating to Store 2 (the "Store 2 Warrant") is attached hereto as Exhibit B, and incorporated herein by reference.

19.     Both the District Attorney and the Sheriff were physically present outside Store 1 and Store 2 while the Raids were being carried out.

20.     Upon information and belief, both the District Attorney and the Sheriff personally observed and directed the execution of the Raids.

21.     Upon information and belief, the Raids were conducted at the instigation of the District Attorney.

22.     Cybernet employees were present at Store 1 and Store 2 during the Raids (collectively, "Cybernet Employees").

23.     None of the Cybernet Employees posed any threat to officer safety.

24.     The Cybernet Employees did not interfere with the execution of the Raids in any manner, and complied with all requests made by law enforcement during the Raids.

25.     Upon information and belief, the Defendants had no legitimate reason to believe that the Cybernet Employees would pose any risk to the safety of law enforcement officials, or that they would interfere with the execution of the Raids.

26. The Raids were performed with the use of excessive and unnecessary force which resulted in substantial damage to Plaintiffs' property as described herein.

27. There was no legitimate police purpose that explains or justifies the unnecessary destruction of Aladdin's and Cybernet's property during the Raids.

28. Upon information and belief, the Raids were conducted with excessive force for the purpose of intentionally and maliciously inflicting unnecessary damage to Plaintiffs' property, and for the purpose of creating maximum publicity and to publicly embarrass the Plaintiffs, their principals and their employees.

29. The total estimate of the amount of property damage done to Store 1 and Store 2 as a result of the unnecessary, excessive and malicious use of force during the Raids is in excess of $10,000.00.

## **Store 1 Property Damage**

LED Lighting

30. Prior to the Raids, Aladdin installed approximately 3,500 linear feet of LED tract lighting along the exterior of Store 1 near the roof line (the "LED Lighting").

31. During the course of the Raids, a Sheriff's deputy climbed onto the roof of Store 1 and ripped the LED Lighting off of the exterior of Store 1.

32. The LED Lighting was not seized. Rather, the Sheriff's deputy tossed the LED Lighting from the roof of Store 1 onto the ground behind Store 1 and left it there.

33. Upon information and belief, Deputy Deaver is the Sheriff's deputy who destroyed the LED Lighting.

34. The LED Lighting was not described in the Store 1 Warrant as an object to be seized during the Raids.

35.     There was no justification or legitimate purpose for disabling or destroying the LED Lighting during the Raids.

36.     The LED Lighting did not pose a threat to officer safety or inhibit the execution of the Raids in any manner.

37.     As a result of Deputy Deaver's actions, the LED Lighting was destroyed.

38.     The forcible removal of the LED Lighting from the roof of Store 1 also damaged the roof which permitted water intrusion into the Store 1.

39.     The water intrusion into Store 1 which resulted from the damage done to Store 1's roof when the LED Lighting was forcibly removed caused further damage to Store 1 which requires professional repair.

40.     The destruction of the LED Lighting by the Defendants also triggered a fire which further damaged Store 1. Fortunately, the fire was discovered quickly by Cybernet's employees, and was able to be extinguished before causing much more significant damage.

41.     Store 1 requires professional repair of the fire damage caused by the destruction of the LED Lighting during the Raids.

Magnetic Locks

42.     Prior to the execution of the Raids, Store 1 was protected by theft deterrent magnetic locks on certain doors (the "Locks").

43.     The Locks are Aladdin's property.

44.     The Locks must be deactivated by a store employee to allow visitors to enter Store 1.

45.     After Sheriff's deputies already entered Store 1 during the Raids, Sheriff's deputies intentionally destroyed the Locks by cutting the Locks' internal wiring.

46. There was no need to destroy the Locks because the Sheriff's deputies already had gained access to Store 1.

47. The Locks could have been disabled by a Cybernet Employee without cutting the wiring simply by unplugging an electric cord from the wall outlet.

48. Had the Defendants or the Sheriff's deputies who carried out the Raids requested Cybernet Employees to disable the Locks, they would readily have complied with the request.

49. The Sheriff's deputies were aware that the Locks could be disabled by Cybernet Employees upon request and without the use of destructive force, because that is how similar locks on the doors of Store 2 were disabled during the Raids.

50. There was no justification or legitimate purpose for the cutting of the Locks' wiring during the Raids.

51. The Locks were not described in the Store 1 Warrant as an object to be seized during the Raids.

Security Cameras

52. Store 1 was equipped with security cameras on the exterior of the building prior to the Raids (the "Security Cameras").

53. Video footage is not stored within the Security Cameras, but rather is stored in external video storage devices located inside Store 1.

54. The Security Cameras are Aladdin's property.

55. Sheriff's deputies forcibly ripped the Security Cameras from the exterior of Store 1 during the course of the Raids, and seized them.

56. The Security Cameras could have been disabled or removed from the exterior of Store 1 by unplugging them rather forcibly ripping them from the wall.

57. Upon information and belief, the Security Cameras, which are in the custody of the Sheriff, were damaged during the Raids to a degree that they no longer can be used.

58. There was no justification or legitimate purpose for forcibly removing the Security Cameras during the Raids in such a manner as to damage them.

59. The forcible removal of the Security Cameras also caused damage to the stucco exterior of Store 1 and the sealed wiring conduits on the roof of Store 1.

60. The damage to the exterior and roof of Store 1 caused by the forcible removal of the Security Cameras also permitted water intrusion into Store 1.

61. The water intrusion in Store 1 caused further damage to Store 1 which requires professional repair.

HVAC Remotes

62. Sheriff's deputies seized two remote devices which operate the HVAC units at Store 1 (the "Remotes").

63. The Remotes are Aladdin's property.

64. The Remotes did not pose a threat to officer safety or inhibit the execution of the Raids in any manner.

65. The Remotes were not described in the Store 1 Warrant as objects to be seized during the Raids.

66. There was no justification or legitimate purpose for seizing the Remotes during the Raids.

67. The Remotes will have to be replaced by Plaintiffs in order to operate the HVAC system.

ATM

68.     During the Raids, Sheriff's deputies also seized an ATM located in Store 1 (the "Store 1 ATM").

69.     The Store 1 ATM is Cybernet's property.

70.     The Store 1 ATM was seized during the Raids, and upon information and belief, presently is in the custody of the Sheriff.

71.     At the time that the ATM was seized, the money housed in the ATM was securely locked, and could not be accessed without a key.

72.     Following the Raids, the Sheriff's office generated an inventory sheet indicating that the cash inside the Store 1 ATM had been accessed and counted.

73.     Although Cybernet Employees would readily have complied with a request to open the Store 1 ATM, no such request ever was made.

74.     Upon information and belief, the Sheriff's office forcibly opened and destroyed the Store 1 ATM in order to access the cash inside.

75.     There was no justification or legitimate purpose for the Sheriff's office to forcibly open and destroy the Store 1 ATM rather than just asking Cybernet to open it.

76.     There was no justification or legitimate purpose for the Sheriff's office to seize the Store 1 ATM at all.

### Store 2 Property Damage

ATM

77.     During the Raids, Sheriff's deputies also seized an ATM located in Store 2 (the "Store 2 ATM").

78.     The Store 2 ATM is Cybernet's property.

79.     During the Raids, a Sheriff's deputy and a contractor working for the Sherriff disassembled and removed parts of the Store 2 ATM in order access the cash inside.

80.     The Sheriff's deputy damaged the Store 2 ATM by disassembling and opening it in such a manner that it no longer can be used in its current state.

81.     The Store 2 ATM remains in a disassembled state, with parts missing and cannot be used.

82.     Although Cybernet Employees would readily have complied with a request to open the Store 2 ATM, no such request ever was made.

83.     There was no justification or legitimate purpose for the Sheriff's office to forcibly open and damage the Store 2 ATM rather than just asking Cybernet to open it

84.     There was no justification or legitimate purpose for the Sheriff's office to seize the contents of the Store 2 ATM at all.

Safe

85.     During the Raids, Sheriff's deputies seized a safe located in Store 2 (the "Safe").

86.     The contents of the Safe were locked inside the Safe at the time that it was seized.

87.     The Safe is Cybernet's property.

88.     Following the Raids, the Sheriff's office generated an inventory sheet indicating that the contents of the Safe were accessed.

89.     Upon information and belief, the Sheriff's office forcibly pried open and destroyed the Safe in order access the contents inside.

90.     Although Cybernet Employees would readily have complied with a request to open the Safe, no such request ever was made.

91.     There was no justification or legitimate purpose for the Sheriff's office to forcibly open and thereby destroy the Safe as opposed to asking Cybernet to open it.

92.     There was no justification or legitimate purpose for the Sheriff's office to seize the Safe at all.

Table

93.     During the Raids, Sheriff's deputies destroyed a wooden table secured to an internal wall of Store 2 (the "Table"), and left the remnants behind.

94.     The Table is Cybernet's property.

95.     The Table was not described in the Store 2 Warrant as an object to be seized during the Raids.

96.     There was no justification or legitimate purpose for destroying the Table during the Raids.

97.     The Table did not pose a threat to officer safety or inhibit the execution of the Raids in any manner.

Wiring

98.     There is Category 5e wiring installed at Store 2 (the "Wiring") used for certain electronic equipment.

99.     The Wiring is Aladdin's property.

100.    Sheriff's deputies intentionally cut the Wiring and destroyed it during the Raids.

101.    The Wiring could have been unplugged from the machines it was powering without destroying it.

102. Cybernet employees present during the Raids would readily have complied with a request to unplug the Wiring, if asked by the Sheriff's deputies. However, no such request ever was made.

103. Upon information and belief, Sheriff's deputies knew that they could have seized the electronic equipment attached to the Wiring without cutting the Wiring.

104. There was no justification or legitimate purpose for cutting the Wiring during the Raids.

105. It was not necessary to cut the Wiring to protect officer safety or facilitate the execution of the Raids in any manner.

106. The Wiring was not described in the Store 2 Warrant as an object to be seized during the Raids.

## The Property Damage Was Intentional and Malicious

107. Upon information and belief, the District Attorney desires to eradicate all electronic sweepstakes or promotions like those offered by Cybernet without regard to whether such sweepstakes or promotions violate the law.

108. Upon information and belief, a primary goal of the District Attorney and Sheriff with regard to the Raids was to publicly humiliate Holly and Jeffrey Smith (the "Smiths"), the owners of Cybernet and Aladdin.

109. Upon information and belief, a primary goal of the District Attorney and the Sheriff with regard to the Raids was to cause damage to Plaintiffs' property in order to cause the Smiths and Plaintiffs gratuitous pain and suffering in the hopes of forcing them to close their lawful businesses.

110. The District Attorney's and Sheriff's malicious intent is evidenced by the fact that on several occasions prior to the Raids, Plaintiffs had invited both the Sheriff and the District Attorney to visit both Store 1 and Store 2 and to view everything in both buildings and to review the manner in which Cybernet conducted its business. Therefore, no "raid" of any kind was necessary for the District Attorney and the Sheriff to carry out the lawful duties of their respective offices, and the Raids were gratuitous exercises of excessive force.

111. The District Attorney's and Sheriff's malicious intent is further evidenced in part by their actions after the Raids.

112. After the Raids, an assistant district attorney informed the magistrate at a bond hearing for the Smiths that she did not care what bond amount was set for Cybernet Employees, but that she wanted "sky high" bond amounts set for the Smiths.

113. Upon information and belief, the assistant district attorney who requested the "sky high" bond, did so at the direction of the District Attorney.

114. The Smiths were charged with sixteen (16) additional charges several months after the Raids, most of which are factually inconsistent with each other.

115. There is no factual or legal justification for the charges brought against the Smiths.

116. Upon information and belief, the District Attorney's office overcharged the Smiths to further humiliate them and to leverage them into closing their lawful businesses.

117. Upon information and belief, an additional motivation for the District Attorney's directive to use destructive force in connection with the Raids was retribution for an unsuccessful prosecution of Jeffrey Smith in Bladen County concerning a sweepstakes promotion offered by Mr. Smith in Bladen County.

118.    Bladen County is part of the 13th Prosecutorial District and therefore under the District Attorney's jurisdiction.

119.    Mr. Smith was prosecuted in Bladen County for this sweepstakes promotion, even though it did not violate the law.

120.    A bitterly fought jury trial over Mr. Smith's sweepstakes offering ended in a mistrial in 2014.

121.    Upon information and belief, the District Attorney directed the Raids to be conducted as alleged herein to seek retribution against Mr. Smith for his embarrassment arising from the mistrial.

122.    After the Raids, the Sheriff also sought to revoke the Smiths' concealed weapons permits.

123.    The Sheriff's act of seeking a revocation of Smiths' concealed weapons permits is highly unusual in these circumstances, particularly in light of the non-violent nature of the charges against the Smiths.

124.    The Sheriff ultimately decided not to revoke the Smiths' concealed weapons permits following an evidentiary hearing.

125.    Upon information and belief, the use of excessive force against the Plaintiffs' property during the Raids was not the product of rogue actions of Sheriff's deputies.

126.    Upon information and belief, the District Attorney and the Sheriff were present at the Raids and able to view and direct the destruction of Aladdin's and Cybernet's personal property and took no action to prevent it.

127.    Upon information and belief, most of the property destruction occurred within the plain sight and at the direction of the District Attorney and the Sheriff.

128. Upon information and belief, Assistant District Attorneys Irene Riel and Glenn Emery also were present and watched the Raids.

129. Upon information and belief, Chief Deputy Sheriff Larry Guyton also was present and watched the Raids.

130. Upon information and belief, the District Attorney and Sheriff jointly directed and encouraged the Sheriff's deputies to destroy Aladdin's and Cybernet's personal property and otherwise to be needlessly destructive during the Raids.

131. Upon information and belief, the District Attorney and Sheriff also directed the Raids to be performed with unnecessary fanfare and publicity in order to embarrass the Smiths and the Plaintiffs.

132. For example, the Raids were performed with the use of a helicopter flying above Store 1 and Store 2.

133. Upon information and belief, the Raids were performed with the use of a helicopter despite the Sheriff and District Attorney having no reason to believe that the use of a helicopter would be needed for the execution of the Raids.

134. Upon information and belief, the Raids were performed with the use of a helicopter and excessive force against Plaintiffs' property to create the public illusion that Store 1 and Store 2 are operated by dangerous criminals.

135. The Raids were performed by the Defendants in a manner designed to create a public spectacle and thereby direct public attention to the District Attorney's and Sheriff's efforts to prevent the lawful use of sweepstakes and other promotions within Bladen County, and to influence the jury pool in Bladen County.

136. Immediately following the Raids, the District Attorney delivered scripted remarks regarding the Raids at a pre-planned press conference at which he boasted of his efforts to eliminate the use of sweepstakes promotions in Bladen County.

137. The District Attorney made unnecessary self-aggrandizing statements at the press conference held after the Raids such as "in Bladen County the last bet has been placed and the game is over."

138. The promotions conducted by Cybernet at Store 1 and Store 2 do not involve bets or gambling.

139. At the press conference held after the Raids, the District Attorney praised the manner in which the Sheriff's office conduct the Raids.

140. The District Attorney praised the manner in which the Sheriff's office conducted the Raids despite, upon information and belief, personally witnessing the unnecessary property damage caused by Sheriff's deputies at Store 1 and Store 2.

141. Upon information and belief, at all times relevant to the allegations in this Complaint, Defendants' actions were malicious, corrupt, and intentionally carried out for improper purposes.

142. Upon information and belief, the Sheriff is covered by liability insurance for the claims asserted in this Complaint, and therefore has waived sovereign immunity through the purchase of liability insurance with regard to those claims.

143. Defendants otherwise are not immune for the claims asserted in this Complaint, or have waived any immunity they may have through their conduct as alleged herein.

## FIRST CAUSE OF ACTION
### (Conversion against all Defendants)

144. Plaintiffs incorporate by reference the preceding allegations in this Complaint as though fully set forth herein.

145. Deputy Deaver and other unknown Sheriff's deputies acting, upon information and belief, under the direction and supervision of the Sheriff and the District Attorney seized and destroyed Plaintiffs' property as described in this Complaint during the course of the Raids.

146. Until such time that Defendants caused the unlawful seizure and destruction of Plaintiffs' property, Plaintiffs were the lawful owners of, and entitled to the immediate possession of, such property.

147. Defendants converted Plaintiffs' property by intentionally destroying that property during the course of the Raids.

148. Defendants had no legitimate right to destroy or damage Plaintiff's property.

149. Plaintiffs have suffered damages in an amount to be proven at trial as the result of the Defendants' unlawful destruction of Plaintiffs' property.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment that the Defendants' Used Excessive Force in Violation of Plaintiffs' Constitutional Rights)

150. Plaintiffs incorporate by reference the preceding allegations in this Complaint as though fully set forth herein.

151. The Fourth and Fourteenth Amendments of the United States Constitution protect Plaintiffs and their property from harm or damage arising from the use of excessive and unnecessary force in the course of executing a search warrant.

152. The Defendants' actions taken to destroy the Plaintiffs' property as described in this Complaint were excessive, unnecessary and not justified under the circumstances.

153.    At all times relevant to the actions complained of in this Complaint, the Defendants knew that their conduct violated Plaintiffs' property rights, but intentionally and maliciously disregarded those rights for improper purposes.

154.    Plaintiffs are entitled to a declaration that the actions of Defendants with regard to the Plaintiffs' property were excessive and unnecessary, and violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## THIRD CAUSE OF ACTION
### (Taking in Violation of the United States and North Carolina Constitutions)

155.    Plaintiffs hereby incorporate the preceding allegations contained in this Complaint as if fully alleged herein.

156.    The Defendants' actions in relation to Aladdin's property, including without limitation, those described above, deprived Aladdin of its rights, privileges, and immunities secured by the Fifth and Fourteenth Amendments to the United States Constitution, and by Article I, Section 19 of the North Carolina Constitution.

157.    The Defendants' actions relating to Aladdin's property, including, without limitation, those described above, constituted a taking of its property without the payment of just compensation in violation of the United States and North Carolina Constitutions and other applicable law.

158.    Aladdin has suffered actual damages in an amount in excess of $10,000.00 as a result of the Defendants' taking of its property.

159.    Aladdin is entitled to recover its actual damages in an amount in excess of $10,000.00 from Defendants as a result of the Defendants' taking of Aladdin's property.

## FOURTH CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1983)

160. Plaintiffs hereby incorporate the preceding allegations contained in this Complaint as if fully alleged herein.

161. Both the Sheriff and the District Attorney have final decision-making authority over their respective offices.

162. As shown by the facts alleged in this Complaint, as well as additional facts and evidence Plaintiffs believe will be developed through further investigation and discovery, Deputy Deaver and other unknown Sheriff's deputies acted under the color of state law either at the joint direction of the Sheriff and the District Attorney, or in accordance with the official policies of the Sheriff and the District Attorney, to deprive Plaintiffs of their rights, privileges, and immunities secured by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

163. Plaintiffs have suffered actual damages in an amount in excess of $10,000 as a result of the violations of their civil and constitutional rights by the Defendants as described in this Complaint, and therefore Plaintiffs are entitled to recover those damages pursuant to 42 U.S.C. § 1983.

164. Plaintiffs are entitled to recover damages on account of the violation of their civil and constitutional rights committed by the Defendants, as described above, pursuant to 42 U.S.C. § 1983.

165. Plaintiffs are entitled to recover their actual costs and attorneys' fees expended as a result of the violations of their civil and constitutional rights by the Defendants, as described above, pursuant to 42 U.S.C. § 1988.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court:

A.   Enter a Judgment declaring that the actions of the Defendants with regard to Plaintiffs constitute excessive force in violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution;

B.   Enter a Judgment declaring that the actions of the Defendants with regard to Plaintiffs constitute a taking of Plaintiffs' property in violation of Plaintiffs' rights under the North Carolina and the United States Constitutions;

C.   Award damages against the Defendants, jointly and severally, and in favor of Plaintiffs in an amount in excess of $10,000.00, to be specifically determined at trial, as a result of the Defendants' conversion of Plaintiffs' Property;

D.   Award damages against the Defendants, jointly and severally, and in favor of Plaintiffs in an amount in excess of $10,000.00, to be specifically determined at trial, as a result of the Defendants' actions and violations of Plaintiffs' rights under the United States and North Carolina Constitutions and pursuant to 42 U.S.C. § 1983;

E.   Award Plaintiffs their actual attorney's fees pursuant to 42 U.S.C. § 1988 and other applicable law;

F.   Grant a trial by jury in this matter on all issues so triable;

G.   Tax the costs of this action against the Defendants; and

H.   Grant such other and further relief as the Court deems just and proper.

This the ___ day of January, 2016.

MORNINGSTAR LAW GROUP

William J. Brian, Jr.
NC State Bar No. 16570
bbrian@morningstarlawgroup.com

Keith P. Anthony
NC State Bar No. 28405
kanthony@morningstarlawgroup.com
630 Davis Drive, Suite 200
Morrisville, NC 27560
Telephone: (919) 590-0385
Facsimile: (919) 882-8890

*Attorneys for Plaintiffs*

STATE OF NORTH CAROLINA                    VERIFICATION

COUNTY OF ~~BLADEN~~ Durham *jm*

I, Holly Smith, hereby state that I am a member and manager of Cybernet LLC ("Cybernet") and that I am duly authorized by Cybernet to make this Verification on its behalf. I am familiar with the facts and circumstances alleged in the Verified Complaint. I have read the Verified Complaint, and the facts alleged therein are true to my knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

This 6th day of January, 2016.

_____
Holly Smith
Cybernet LLC

Sworn to and subscribed before me this 6th day of January, 2016, by Holly Smith.

_____
Signature of Notary Public

JANE A. MOSER, Notary Public
Typed/Printed Name

[Official Seal]                    My Commission expires: ~~1/6~~ 12/20/2016

STATE OF NORTH CAROLINA                    VERIFICATION

COUNTY OF B~~LADEN~~ DuR~~HAM~~

I, Jeffrey Smith, hereby state that I am a member and manager of Aladdin Real Estate, LLC ("Aladdin") and that I am duly authorized by Aladdin to make this Verification on its behalf. I am familiar with the facts and circumstances alleged in the Verified Complaint. I have read the Verified Complaint, and the facts alleged therein are true to my knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

This _6_ day of January, 2016.

_____

Jeffrey Smith
Aladdin Real Estate, LLC

Sworn to and subscribed before me this _6th_ day of January, 2016, by Jeffrey Smith.

_____
Signature of Notary Public

__JANE A. MOSER__, Notary Public
Typed/Printed Name

[Official Seal]                    My Commission expires: _12/20/2016_

| | |
|---|---|
| **File No.** | **STATE OF NORTH CAROLINA** |

## SEARCH WARRANT

**STATE OF NORTH CAROLINA**

BLADEN    County

In The General Court Of Justice
District/Superior Court Division

**IN THE MATTER OF**

34 Third St. Dublin, NC 28332

| Date Issued | Time Issued |
|---|---|
| 05/28/2015 | 7:05 ☐ AM ☒ PM |

Name Of Applicant
Capt. Jeffery Tyler

Name Of Additional Affiant

Name Of Additional Affiant

To any officer with authority and jurisdiction to conduct the search authorized by this Search Warrant:

I, the undersigned, find that there is probable cause to believe that the property and person described in the application on the reverse side and related to the commission of a crime is located as described in the application.

You are commanded to search the premises, vehicle, person and other place or item described in the application for the property and person in question. If the property and/or person are found, make the seizure and keep the property subject to Court Order and process the person according to law.

You are directed to execute this Search Warrant within forty-eight (48) hours from the time indicated on this Warrant and make due return to the Clerk of the Issuing Court.

This Search Warrant is issued upon information furnished under oath by the person(s) shown.

### RETURN OF SERVICE

I certify that this Search Warrant was received and executed as follows:

| Date Received | Time Received |
|---|---|
| 5-28-2015 | 7:10 ☐ AM ☒ PM |

| Date Executed | Time Executed |
|---|---|
| 05/28/15 | 10:05 ☒ AM ☐ PM |

☒ I made a search of
54 Third St Dublin NC
28332

_____ as commanded.

☐ I seized the items listed on the attached inventory.

☐ I did not seize any items.

☐ This Warrant WAS NOT executed within forty-eight (48) hours of the date of issuance and I hereby return it not executed.

| Date | Signature |
|---|---|
| 5-29-15 | |

☐ Deputy CSC   ☐ Assistant CSC   ☐ CSC
☐ Magistrate   ☐ District Ct. Judge   ☒ Superior Ct. Judge

Signature Of Officer Making Return

This Search Warrant was returned to me on the date and time shown below.

| Department Or Agency Of Officer | Incident Number | Date | Time | | Signature | |
|---|---|---|---|---|---|---|
| | 2015-1188 | | | ☐ AM ☐ PM | | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court |

AOC-CR-119, Rev. 9/02
©2002 Administrative Office of the Courts

(Over)

Page 1 of 11

**EXHIBIT 4**

```
(                              )
(STATE OF NORTH CAROLINA       )
(COUNTY OF BLADEN              )                    AFFIDAVIT
(                              )
```

.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON
IN CONTROL OF ALADDIN SWEEPSTAKES, 34 THIRD STREET DUBLIN, NC. THE
BUSINESS IS TAN BUILDING WITH A STONE FRONT WALL WITH A RED AWNING
ON THE FRONT AND HAS SIGNAGE INDENTIFYING AS ALADDIN SWEEPSTAKES
ON THE FRONT ENTRANCE DOOR.

I, J. L. Tyler, being duly sworn, depose and say:
I am a law enforcement officer, being employed by the Bladen County Sheriff's Office, and a duly
appointed deputy of the Sheriff of Bladen County.
I am the Captain supervising the Criminal Investigations Division and have been a sworn law
enforcement officer for over 21 years. I have been awarded the Advanced Law Enforcement
Certification from the North Carolina Sheriffs Education and Training Standards Commission. I have
earned a Bachelor of Science Degree in Criminal Justice Administration from Mount Olive College. I
have also earned an Associate in Applied Science Degree in Criminal Justice Technology from
Bladen Community College. I have received training in, Criminal Investigation at Johnston
Community College, Robeson Community College, Bladen Community College, the Federal Law
Enforcement Training Center and the Mid Atlantic Narcotics Training Academy in Atlantic Beach,
NC. I have conducted investigations concerning Murders, Death Investigations, Breaking and
Entering, Larceny, Financial Crimes, Assaults, and Child Sex Cases.

Prior to April 29, 2015, the office of Sheriff of Bladen County received a number of citizen reports
complaining of illegal gaming activities occurring in a premises identified as Aladdin in Dublin,
Bladen County, North Carolina, including reports of the operation of gaming machines which
provided card games, keno, and other illegal games. Also reports were also received from local
churches complaining that citizens would partition the churches for money, stating they had lost their
money at the Aladdin and could not support their families.

On April 29th 2015, the Bladen County Sheriff's Office, with assistance from the Cumberland
County Sheriff's Office initiated an investigation into the allegations of illegal gambling operations
in violation of North Carolina Statue 14-292. Gambling, 14-304. Manufacture, sale, etc. of slot
machines or devices, 14-305. Agreements with reference to slot machines or devices made unlawful,
14-306.1A. Types of machines and devices prohibited by law, 14-306.4 Electronic machines and
devices for sweepstakes prohibited; and other violations of Part 1 of Article 37 A of the North
Carolina General Statues.

SWORN AND SUBSCRIBED BEFORE ME
THIS _28_ DAY OF _May_ , 2015.  _____
                                                        Affiant

_____          _7:05 PM_
   Superior Court Judge                      Time

Page _3_ of _11_

```
(                          )
(STATE OF NORTH CAROLINA   )
(COUNTY OF BLADEN          )          AFFIDAVIT
(                          )
```

**.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 34 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH A STONE FRONT WALL WITH A RED AWNING ON THE FRONT AND HAS SIGNAGE INDENTIFYING AS ALADDIN SWEEPSTAKES ON THE FRONT ENTRANCE DOOR.**

During the investigation into the operations of illegal gambling in the Bladen County area, Bladen County Sheriff's Office personnel identified Jeffrey S Smith as an owner and operator of Cybernet LLC, DBA Aladdin Sweepstakes, who operates a gaming location in Bladen County and is located at 34 Third Street, Dublin NC 28332

Bladen County tax records indicate that Jeffrey S Smith is an owner of Aladdin Sweepstakes located at 34 Third Street Dublin, NC 28332.

These records indicated PO Box 554 Dublin, NC 28332 as the mailing address for Jeffrey S Smith.

Observation and investigation by members of the Bladen County Sheriff's Office have shown that the business located at 34 Third Street, Dublin NC 28332 is named Aladdin Sweepstakes. Aladdin Real Estate, LLC, is a business registered with the North Carolina Secretary of State as a corporation in which Jeffrey S Smith is the registered agent.

The investigation revealed that illegal video gaming devices and illegal gambling machines and games are being operated at Aladdin Sweepstakes located at 34 Third Street, Dublin NC 28332. Personnel of the Cumberland County Sheriff's Office have observed and played the illegal games as part of an undercover investigation at the location. Within the past 72 hours undercover operatives and/or surveillance have revealed the presence and operation of illegal video gaming devices and games at the location.

On Tuesday May 26th, 2015, at approximately 10:27 am an undercover Agent of the Cumberland County Organized Crime Unit (hereafter referred to as OCU), conducted an undercover operation on an underground gambling business located at 29 3rd Street known as Aladdin Sweepstakes as well as a business known as Lil Aladdin located at 34 3rd Street in Dublin, NC which is located in Bladen County.

The undercover Agent photographed $100 of Bladen County Special Funds Money and drove to 29 3rd Street Dublin, NC which is at the intersection with Highway 87 South. At approximately

SWORN AND SUBSCRIBED BEFORE ME
THIS _28_ DAY OF _____, 2015.          _____
                                              Affiant

_____        _____
Superior Court Judge          Time

Page _4_ of _11_

```
(                           )
(STATE OF NORTH CAROLINA    )
(COUNTY OF BLADEN           )          AFFIDAVIT
(                           )
```

**.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 34 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH A STONE FRONT WALL WITH A RED AWNING ON THE FRONT AND HAS SIGNAGE INDENTIFYING AS ALADDIN SWEEPSTAKES ON THE FRONT ENTRANCE DOOR.**

10:27am the undercover Agent arrived at the business and pulled the CCSO undercover vehicle in front of the business and parked. The business has a large sign with "Aladdin Sweepstakes" above the door. The undercover Agent walked to the front door with a tinted window and rang the doorbell. Moments later the undercover Agent pulled on the door handle and the door opened.

The undercover Agent walked into the business and observed 25 sweepstakes monitors which appeared to be operational as well as several large computers on the counters next to the flat screen computer screens. The undercover Agent walked to the second room of three and stepped to the center bar area. In this room the undercover Agent observed 20 Sweepstakes machines some of which had the flat screen monitors mounted in Video Gaming Machine (VGM) cabinets. The monitors in this room had the words "Blue Diamond" on the screen. At the bar were four computers and an Indian female who has positively identified as Sonya Silva. The undercover Agent had previously met Silva at the gambling business across the street known as Lil Aladdin on several occasion.

The undercover Agent asked Silva what she was doing there and Silva replied she worked both locations. The undercover Agent handed Silva $20 of Bladen County SFA's and a NC driver's license. Silva took the Agent's license and imputed the Agent's license number into the computer. The undercover Agent walked into the third room and attempted to log into one of the computers but was unable to. The undercover Agent walked back to the counter and waited for Silva to come assist the Agent with logging in. Silva then walked into the back room and logged the Agent into one of the computers. After playing the game Double Wilds Triple on the computer the undercover Agent hit the "redeem" button on the computer screen. The undercover Agent then walked to the counter in the second room to receive his winnings. The undercover Agent was paid out thirteen dollars in US Currency by Silva. The undercover Agent then exited out of the front door.

SWORN AND SUBSCRIBED BEFORE ME
THIS _78_ DAY OF _May_____, 2015.                     _____
                                                        Affiant

_____        7:05 PM
Superior Court Judge             Time

Page _5_ of _11_

**.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 34 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH A STONE FRONT WALL WITH A RED AWNING ON THE FRONT AND HAS SIGNAGE INDENTIFYING AS ALADDIN SWEEPSTAKES ON THE FRONT ENTRANCE DOOR.**

The undercover Agent then got into a Cumberland County vehicle and drove directly across the street to 34 3rd Street which is the business on the far right of the shopping center and has a name of "Lil Aladdin". The undercover Agent walked in and towards the back where a white female was sitting behind the counter. The female has been positively identified as Brittney Meshaw Heverly. The undercover Agent had met Heverly at the gambling location across the street. Heverly asked the undercover Agent if the Agent had ever been to this location. The undercover Agent replied "Yes" and handed Heverly, a NC Driver's License as well as twenty dollars in SFA moneys. Heverly was unable to locate the Agent in the computer system and asked the Agent when the Agent had been to this location. The undercover Agent advised a week or so prior. Heverly stated they had changed software providers because the provider they used was leaving the state and they had gotten new gambling software. The undercover Agent asked which software the business had used prior and Heverly stated "Frontier". Heverly advised the undercover Agent the new software was named "Land of Aladdin" and she would have to enter the undercover Agent into the computer system. Heverly then walked the Agent to one of the computer screens and helped the undercover Agent log into the new software. Heverly then explained to the undercover Agent the new software allowed the undercover Agent to purchase merchandise online if desired although that was not necessary to play the games or receive winnings from the gambling. The undercover Agent sat down and played several games as well as clicked the computer mouse on the online store to view the merchandise. The undercover Agent attempted to purchase a bicycle however to purchase using credit the undercover Agent would have to use email addresses as well as other information. The undercover Agent played "Luck o the Irish" and "Aladdin" games which are slot machine style games with scrolling wheels. The undercover Agent then went to the counter to cash out. Heverly paid out the undercover Agent eleven dollars in US currency. The undercover Agent then asked Heverly what the gambling business across the street was going to do reference their software. Heverly advised Aladdin's would be switching to Land of Aladdin software soon. The undercover Agent then exited the business and departed the area.

SWORN AND SUBSCRIBED BEFORE ME
THIS  24  DAY OF  Ma  , 2015.

_____
Affiant

_____  7:05 PM
Superior Court Judge  Time

Page 6 of 11

```
(                            )
(STATE OF NORTH CAROLINA     )
(COUNTY OF BLADEN            )                    AFFIDAVIT
(                            )
```

**.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 34 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH A STONE FRONT WALL WITH A RED AWNING ON THE FRONT AND HAS SIGNAGE INDENTIFYING AS ALADDIN SWEEPSTAKES ON THE FRONT ENTRANCE DOOR.**

This affiant has probable cause to believe that such illegal gaming operations are and will be continuing and that such devices and games will be found at the location to be searched.

Information obtained from the undercover operation have clearly shown that gambling operations involving video slot machines, or similar devices proscribed under Chapter 14 of the North Carolina General Statutes, viz., illegal gaming operations, are primarily a cash operation, but also involve various types of computer devices, as well as paper records, and the like. This information, which has been corroborated, and this training, establishes that cash, receipts, ledgers, journals, documents, gaming devices and the like, are frequently and regularly retrieved from the gambling locations.

The nature of the gambling operations surveilled and investigated requires that the owner/operator maintain cash on hand or that is readably accessible to payout winners and other expenses. Such gaming operations often maintain large amounts of cash, but remove amounts of cash in order to avoid robberies and the like, but may often have a cachet of cash for payouts and other expenses and such cache is used not only as an instrumentality of the crime, but is typically and regularly generated as a fruit of the crime, often hidden in various small enclosures, safes, cabinets, drawers, and other enclosures. Gambling operations create records and documents that detail daily tally and receipts within the organization. These receipts and records are kept electronically, digitally, as in journals, ledgers, and separate papers and other documents.

Gambling operations involving internet sweepstakes are often billed by vendors or suppliers by email, electronically or digitally communicated records or files.

In addition, such gaming operations use, computers, peripherals, digital or electronic media, automated teller machines, money counting devices, smartphones, and other devices to facilitate the gaming operations and to supply communications and records.

The location to be searched have deployed and continue to use counter surveillance equipment such as video cameras, monitors, hard drives, modems, and communications equipment to conduct and aid and abet the illegal gaming operations.

SWORN AND SUBSCRIBED BEFORE ME
THIS _28_ DAY OF _Aug_ , 2015.            _____
                                                      Affiant

_____        _7:05 PM_
Superior Court Judge               Time

Page _7_ of _11_

```
(                                    )
(STATE OF NORTH CAROLINA  )
(COUNTY OF BLADEN            )              AFFIDAVIT
(                                    )
```

**.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 34 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH A STONE FRONT WALL WITH A RED AWNING ON THE FRONT AND HAS SIGNAGE INDENTIFYING AS ALADDIN SWEEPSTAKES ON THE FRONT ENTRANCE DOOR.**

The activities and pattern of conduct observed, involving Jeffrey S Smith, and his employees have been shown to be consistent with the patterns and customs and practices of those involved in illegal gaming operations, and in light of the fact that members of the Cumberland County Sheriff's Office operating in an undercover capacity have personally seen and observed the illegal gaming activity at the Aladdin Sweepstakes owned and/or operated by Jeffrey S Smith and his agents.

The information sought is relevant and material to an ongoing criminal investigation that the Bladen County Sheriff's Office is conducting and will further produce evidence and reveal actions and activities conducted in violation of N.C. General Statute § 14-292. Gambling, § 14-304. Manufacture, sale, etc., of slot machines and devices, § 14-305. Agreements with reference to slot machines or devices made unlawful, § 14-306.1A. Types of machines and devices prohibited by law, § 14-306.4 Electronic machines and devices for sweepstakes prohibited; and other violations of Part 1 of Article 37 A of the North Carolina General Statutes; and that there is probable cause to believe that evidence of the commission of these and other criminal acts as well as fruits and instrumentalities of the crime will be found in the place and the property to be searched.

Based on the totality of the circumstances, a search warrant should be granted to search the location indicated and to seize the items of property indicated and further to search such items, including, but not limited to, documents, records, computer devices, files, and the like, and further, this affiant submits that should the court authorize the search warrant for this location and this property, Bladen County Sheriff's Office personnel may locate and seize a quantity of illegal video gaming instruments, proceeds of illegal gaming, documents showing facilitation and ownership.

SWORN AND SUBSCRIBED BEFORE ME
THIS _7ᵗ_ DAY OF ___/₁ₐ₁___ , 2015.                    _____
                                                                                    Affiant

_____          _7:05 PA_
Superior Court Judge                    Time

Page _8_ of _11_

```
(                          )
(STATE OF NORTH CAROLINA   )
(COUNTY OF BLADEN          )                    AFFIDAVIT
(                          )
```

.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON
IN CONTROL OF ALADDIN SWEEPSTAKES, 34 THIRD STREET DUBLIN, NC. THE
BUSINESS IS TAN BUILDING WITH A STONE FRONT WALL WITH A RED AWNING
ON THE FRONT AND HAS SIGNAGE INDENTIFYING AS ALADDIN SWEEPSTAKES
ON THE FRONT ENTRANCE DOOR.

**Location to be Searched**



SWORN AND SUBSCRIBED BEFORE ME
THIS _28_ DAY OF _May_ , 2015.

_____
                                              Affiant

_____        _705 PM_
Superior Court Judge              Time

Page _9_ of _11_



```
(                          )
(STATE OF NORTH CAROLINA   )
(COUNTY OF BLADEN          )                    AFFIDAVIT
(                          )
```

.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON
IN CONTROL OF ALADDIN SWEEPSTAKES, 34 THIRD STREET DUBLIN, NC. THE
BUSINESS IS TAN BUILDING WITH A STONE FRONT WALL WITH A RED AWNING
ON THE FRONT AND HAS SIGNAGE INDENTIFYING AS ALADDIN SWEEPSTAKES
ON THE FRONT ENTRANCE DOOR.

### Items to be Seized and Searched

1. Video Gaming machines and other forms of electrical, mechanical, or computer devices
   as defined under N.C.G.S. 14-306.1A.

2. Financial proceeds, cash, and other assets obtained as a result of dealings in illegal video
   gaming operations, and any containers, objects, personal property, or the like, which may enclose
   or contain any such objects.

3. Books, records, receipts, notes, ledgers, and other documents relating to the
   transportation, ordering, purchasing, and distribution, of illegal video gaming and any containers,
   objects, personal property, or the like, which may enclose    or contain any such objects.

4. Papers, tickets, notes, schedules, receipts, and other items relating to domestic and
   foreign travel, and purchase, rental, or lease of automobiles and any containers, objects, personal
   property, or the like, which may enclose    or contain any such objects.

5. Books, records, receipts, bank statements and records, money drafts, letters of credit,
   money orders and cashier's check receipts, bank checks, and other items evidencing the
   obtaining, secreting, transfer and / or concealment of assets and the obtaining, secreting,
   transfer, concealment and / or expenditure of money and any containers, objects, personal
   property, or the like, which may enclose    or contain any such objects.

6. Photographs / Video, in particular photographs / video of co-conspirators, of assets,
   and/or of illegal video gaming and any containers, objects, personal property, or the like, which
   may enclose    or contain any such objects.

7. Weapons, particularly firearms, including but not limited to handguns revolvers, semiautomatic
   pistols, and other automatic and semi-automatic weapons used as protection for
   illegal video gaming and other related objects.

SWORN AND SUBSCRIBED BEFORE ME
THIS _28_ DAY OF _____ , 2015.                         _____
                                                              Affiant

_____        _7:05 P___
Superior Court Judge                Time

Page _10_ of _11_

```
(                                    )
(STATE OF NORTH CAROLINA            )
(COUNTY OF BLADEN                   )          AFFIDAVIT
(                                    )
```

.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON
IN CONTROL OF ALADDIN SWEEPSTAKES, 34 THIRD STREET DUBLIN, NC. THE
BUSINESS IS TAN BUILDING WITH A STONE FRONT WALL WITH A RED AWNING
ON THE FRONT AND HAS SIGNAGE INDENTIFYING AS ALADDIN SWEEPSTAKES
ON THE FRONT ENTRANCE DOOR.

## Items to be Seized Continuation

8. Items or articles of personal property tending to show ownership dominion, or control of
   the premises and including keys to the locations to be searched and any containers, objects,
personal property, or the like, which may enclose    or contain any such objects.

9. Business and Personal computers, laptop computers, scanners, copiers, monitors, ATM
   devices, money counters, handheld computers/organizers *(e.g.,* Blackberry, iPhone, iPad,
   Palm etc.), computer files, indicating access to electronic mail services, hard disks,
   floppy disks and any other electronic media containing evidence of illegal video gaming
   and the amassing, transfer, secreting and laundering of money obtained from illegal video
   gaming to be examined by a competent forensics specialist and any containers, objects, personal
property, or the like, which may enclose or contain any such objects.

10. Other fruits and instrumentalities of the crime or crimes.

SWORN AND SUBSCRIBED BEFORE ME
THIS _25_ DAY OF _____, 2015.          _____
                                                Affiant

_____          _____
Superior Court Judge              Time

Page _11_ of _11_

Copy

**STATE OF NORTH CAROLINA**

BLADEN _____ County

In The General Court Of Justice
District/Superior Court Division

| File No. | |
|---|---|
| **SEARCH WARRANT** | |

**IN THE MATTER OF**

29 Third St. Dublin, NC 28332

| Date Issued | Time Issued | |
|---|---|---|
| 05/28/2015 | 7:00 | ☐ AM ☒ PM |

Name Of Applicant
Capt. Jeffery Tyler

Name Of Additional Affiant

Name Of Additional Affiant

**RETURN OF SERVICE**
I certify that this Search Warrant was received and executed as follows:

| Date Received | Time Received | |
|---|---|---|
| 5/28/2015 | 7:05 | ☐ AM ☒ PM |
| Date Executed | Time Executed | |
| 5/29/15 | 10:20 | ☒ AM ☐ PM |

☐ I made a search of

_____

_____

_____ as commanded.

☐ I seized the items listed on the attached inventory.

☐ I did not seize any items.

☐ This Warrant WAS NOT executed within forty-eight (48) hours of the date of issuance and I hereby return it not executed.

Signature Of Officer Making Return

| Department Or Agency Of Officer | Incident Number |
|---|---|
| | 2015-1187 |

To any officer with authority and jurisdiction to conduct the search authorized by this Search Warrant:

I, the undersigned, find that there is probable cause to believe that the property and person described in the application on the reverse side and related to the commission of a crime is located as described in the application.

You are commanded to search the premises, vehicle, person and other place or item described in the application for the property and person in question. If the property and/or person are found, make the seizure and keep the property subject to Court Order and process the person according to law.

You are directed to execute this Search Warrant within forty-eight (48) hours from the time indicated on this Warrant and make due return to the Clerk of the Issuing Court.

This Search Warrant is issued upon information furnished under oath by the person(s) shown.

| Date | Signature | | |
|---|---|---|---|
| 5-28-15 | _____ | ☐ Deputy CSC ☐ Assistant CSC ☐ CSC | |
| | | ☐ Magistrate ☐ District Ct. Judge ☒ Superior Ct. Judge | |

This Search Warrant was returned to me on the date and time shown below.

| Date | Time | | Signature | |
|---|---|---|---|---|
| | | ☐ AM ☐ PM | | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court |

AOC-CR-119, Rev. 9/02
©2002 Administrative Office of the Courts

(Over)

**EXHIBIT
B**

| ( | ) |
|---|---|
| (STATE OF NORTH CAROLINA | ) |
| (COUNTY OF BLADEN | ) |
| ( | ) |

**AFFIDAVIT**

.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON
IN CONTROL OF ALADDIN SWEEPSTAKES, 29 THIRD STREET DUBLIN, NC. THE
BUSINESS IS TAN BUILDING WITH GOLD TRIM WITH A RED CENTER WALL AND
HAS SIGNAGE IDENTIFYING AS ALADDIN SWEEPSTAKES ABOVE THE FRONT
ENTRANCE DOOR.

I, J. L. Tyler, being duly sworn, depose and say:

I am a law enforcement officer, being employed by the Bladen County Sheriff's Office,
I am the Captain supervising the Criminal Investigations Division and have been a sworn law
enforcement officer for over 21 years. I have been awarded the Advanced Law Enforcement
Certification from the North Carolina Sheriffs Education and Training Standards Commission. I have
earned a Bachelor of Science Degree in Criminal Justice Administration from Mount Olive College. I
have also earned an Associate in Applied Science Degree in Criminal Justice Technology from
Bladen Community College. I have received training in, Criminal Investigation at Johnston
Community College, Robeson Community College, Bladen Community College, the Federal Law
Enforcement Training Center and the Mid Atlantic Narcotics Training Academy in Atlantic Beach,
NC. I have conducted investigations concerning Murders, Death Investigations, Breaking and
Entering, Larceny, Financial Crimes, Assaults, and Child Sex Cases.

Prior to April 29, 2015, the office of Sheriff of Bladen County received a number of citizen reports
complaining of illegal gaming activities occurring in a premises identified as Aladdin in Dublin,
Bladen County, North Carolina, including reports of the operation of gaming machines which
provided card games, keno, and other illegal games. Also reports were also received from local
churches complaining that citizens would partition the churches for money, stating they had lost their
money at the Aladdin and could not support their families.

On April 29th 2015, the Bladen County Sheriff's Office, with assistance from the Cumberland
County Sheriff's Office initiated an investigation into the allegations of illegal gambling operations
in violation of North Carolina Statue 14-292. Gambling, 14-304. Manufacture, sale, etc. of slot
machines or devices, 14-305. Agreements with reference to slot machines or devices made unlawful,
14-306.1A. Types of machines and devices prohibited by law, 14-306.4 Electronic machines and
devices for sweepstakes prohibited; and other violations of Part 1 of Article 37 A of the North
Carolina General Statues.

SWORN AND SUBSCRIBED BEFORE ME
THIS 28 DAY OF _May_ , 2015.

_____
Affiant

_____     7:00 PM
Superior Court Judge              Time

Page 3 of 11

```
(                            )
(STATE OF NORTH CAROLINA     )
(COUNTY OF BLADEN            )                    AFFIDAVIT
(                            )
```

**.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 29 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH GOLD TRIM WITH A RED CENTER WALL AND HAS SIGNAGE IDENTIFYING AS ALADDIN SWEEPSTAKES ABOVE THE FRONT ENTRANCE DOOR.**

During the investigation into the operations of illegal gambling in the Bladen County area, Bladen County Sheriff's Office personnel identified Jeffrey S Smith as an owner and operator of Cybernet LLC, DBA Aladdin Sweepstakes, who operates a gaming location in Bladen County and is located at 29 Third Street, Dublin NC 28332

Bladen County tax records indicate that Jeffrey S Smith is an owner of Aladdin Sweepstakes located at 29 Third Street Dublin, NC 28332.

These records indicated PO Box 554 Dublin, NC 28332 as the mailing address for Jeffrey S Smith.

Observation and investigation by members of the Bladen County Sheriff's Office have shown that the business located at 29 Third Street, Dublin NC 28332 is named Aladdin Sweepstakes. Aladdin Real Estate, LLC, is a business registered with the North Carolina Secretary of State as a corporation in which Jeffrey S Smith is the registered agent.

The investigation revealed that illegal video gaming devices and illegal gambling machines and games are being operated at Aladdin Sweepstakes located at 29 Third Street, Dublin NC 28332. Personnel of the Cumberland County Sheriff's Office have observed and played the illegal games as part of an undercover investigation at the location. Within the past 72 hours undercover operatives and/or surveillance have revealed the presence and operation of illegal video gaming devices and games at the location.

On Tuesday May 26th, 2015, at approximately 10:27 am an undercover Agent of the Cumberland County Organized Crime Unit (hereafter referred to as OCU), conducted an undercover operation on an underground gambling business located at 29 3rd Street known as Aladdin Sweepstakes as well as a business known as Lil Aladdin located at 34 3rd Street in Dublin, NC which is located in Bladen County.

The undercover Agent photographed $100 of Bladen County Special Funds Money and drove to 29 3rd Street Dublin, NC which is at the intersection with Highway 87 South. At approximately 10:27am the undercover Agent arrived at the business and pulled the CCSO undercover vehicle

SWORN AND SUBSCRIBED BEFORE ME
THIS _2 8_ DAY OF _____, 2015.      _____
                                            Affiant

_____          _7:00 PM_
Superior Court Judge              Time

Page _4_ of _11_

.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 29 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH GOLD TRIM WITH A RED CENTER WALL AND HAS SIGNAGE IDENTIFYING AS ALADDIN SWEEPSTAKES ABOVE THE FRONT ENTRANCE DOOR.

in front of the business and parked. The business has a large sign with "Aladdin Sweepstakes" above the door. The undercover Agent walked to the front door with a tinted window and rang the doorbell. Moments later the undercover Agent pulled on the door handle and the door opened.

The undercover Agent walked into the business and observed 25 sweepstakes monitors which appeared to be operational as well as several large computers on the counters next to the flat screen computer screens. The undercover Agent walked to the second room of three and stepped to the center bar area. In this room the undercover Agent observed 20 Sweepstakes machines some of which had the flat screen monitors mounted in Video Gaming Machine (VGM) cabinets. The monitors in this room had the words "Blue Diamond" on the screen. At the bar were four computers and an Indian female who has positively identified as Sonya Silva. The undercover Agent had previously met Silva at the gambling business across the street known as Lil Aladdin on several occasion.

The undercover Agent asked Silva what she was doing there and Silva replied she worked both locations. The undercover Agent handed Silva $20 of Bladen County SFA's and a NC driver's license. Silva took the Agent's license and imputed the Agent's license number into the computer. The undercover Agent walked into the third room and attempted to log into one of the computers but was unable to. The undercover Agent walked back to the counter and waited for Silva to come assist the Agent with logging in. Silva then walked into the back room and logged the Agent into one of the computers. After playing the game Double Wilds Triple on the computer the undercover Agent hit the "redeem" button on the computer screen. The undercover Agent then walked to the counter in the second room to receive his winnings. The undercover Agent was paid out thirteen dollars in US Currency by Silva. The undercover Agent then exited out of the front door.

The undercover Agent then got into a Cumberland County vehicle and drove directly across the street to 34 3rd Street which is the business on the far right of the shopping center and has a name

SWORN AND SUBSCRIBED BEFORE ME
THIS _7̲8̲_ DAY OF _/2a̲_____, 2015.                    _____
                                                              Affiant

_____              _7̲:̲0̲0̲ ̲f̲s̲_
Superior Court Judge                  Time

Page _5̲_ of _1̲1̲_

**.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 29 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH GOLD TRIM WITH A RED CENTER WALL AND HAS SIGNAGE IDENTIFYING AS ALADDIN SWEEPSTAKES ABOVE THE FRONT ENTRANCE DOOR.**

of "Lil Aladdin". The undercover Agent walked in and towards the back where a white female was sitting behind the counter. The female has been positively identified as Brittney Meshaw Heverly. The undercover Agent had met Heverly at the gambling location across the street. Heverly asked the undercover Agent if the Agent had ever been to this location. The undercover Agent replied "Yes" and handed Heverly, a NC Driver's License as well as twenty dollars in SFA moneys. Heverly was unable to locate the Agent in the computer system and asked the Agent when the Agent had been to this location. The undercover Agent advised a week or so prior. Heverly stated they had changed software providers because the provider they used was leaving the state and they had gotten new gambling software. The undercover Agent asked which software the business had used prior and Heverly stated "Frontier". Heverly advised the undercover Agent the new software was named "Land of Aladdin" and she would have to enter the undercover Agent into the computer system. Heverly then walked the Agent to one of the computer screens and helped the undercover Agent log into the new software. Heverly then explained to the undercover Agent the new software allowed the undercover Agent to purchase merchandise online if desired although that was not necessary to play the games or receive winnings from the gambling. The undercover Agent sat down and played several games as well as clicked the computer mouse on the online store to view the merchandise. The undercover Agent attempted to purchase a bicycle however to purchase using credit the undercover Agent would have to use email addresses as well as other information. The undercover Agent played "Luck o the Irish" and "Aladdin" games which are slot machine style games with scrolling wheels. The undercover Agent then went to the counter to cash out. Heverly paid out the undercover Agent eleven dollars in US currency. The undercover Agent then asked Heverly what the gambling business across the street was going to do reference their software. Heverly advised Aladdin's would be switching to Land of Aladdin software soon. The undercover Agent then exited the business and departed the area.

This affiant has probable cause to believe that such illegal gaming operations are and will be continuing and that such devices and games will be found at the location to be searched.

SWORN AND SUBSCRIBED BEFORE ME
THIS _28_ DAY OF _Aug_____, 2015.    _____
                                         Affiant

_____    _700 PM_
Superior Court Judge                Time

Page _6_ of _11_

```
(                              )
(STATE OF NORTH CAROLINA       )
(COUNTY OF BLADEN              )          AFFIDAVIT
(                              )
```

**.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 29 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH GOLD TRIM WITH A RED CENTER WALL AND HAS SIGNAGE IDENTIFYING AS ALADDIN SWEEPSTAKES ABOVE THE FRONT ENTRANCE DOOR.**

Information obtained from the undercover operation have clearly shown that gambling operations involving video slot machines, or similar devices proscribed under Chapter 14 of the North Carolina General Statutes, *viz.,* illegal gaming operations, are primarily a cash operation, but also involve various types of computer devices, as well as paper records, and the like. This information, which has been corroborated, and this training, establishes that cash, receipts, ledgers, journals, documents, gaming devices and the like, are frequently and regularly retrieved from the gambling locations.

The nature of the gambling operations surveilled and investigated requires that the owner/operator maintain cash on hand or that is readably accessible to payout winners and other expenses. Such gaming operations often maintain large amounts of cash, but remove amounts of cash in order to avoid robberies and the like, but may often have a cachet of cash for payouts and other expenses and such cache is used not only as an instrumentality of the crime, but is typically and regularly generated as a fruit of the crime, often hidden in various small enclosures, safes, cabinets, drawers, and other enclosures. Gambling operations create records and documents that detail daily tally and receipts within the organization. These receipts and records are kept electronically, digitally, as in journals, ledgers, and separate papers and other documents.

Gambling operations involving internet sweepstakes are often billed by vendors or suppliers by email, electronically or digitally communicated records or files.

In addition, such gaming operations use, computers, peripherals, digital or electronic media, automated teller machines, money counting devices, smartphones, and other devices to facilitate the gaming operations and to supply communications and records.

The location to be searched have deployed and continue to use counter surveillance equipment such as video cameras, monitors, hard drives, modems, and communications equipment to conduct and aid and abet the illegal gaming operations.

The activities and pattern of conduct observed, involving Jeffrey S Smith, and his employees have been shown to be consistent with the patterns and customs and practices of those involved in illegal gaming operations, and in light of the fact that members of the Cumberland County Sheriff's Office

SWORN AND SUBSCRIBED BEFORE ME
THIS _29_ DAY OF _Jan_____, 2015.          _____
                                                      Affiant

_____          _7:00 PM_
Superior Court Judge                 Time

Page _7_ of _11_

**.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 29 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH GOLD TRIM WITH A RED CENTER WALL AND HAS SIGNAGE IDENTIFYING AS ALADDIN SWEEPSTAKES ABOVE THE FRONT ENTRANCE DOOR.**

operating in an undercover capacity have personally seen and observed the illegal gaming activity at the Aladdin Sweepstakes owned and/or operated by Jeffrey S Smith and his agents.

The information sought is relevant and material to an ongoing criminal investigation that the Bladen County Sheriff's Office is conducting and will further produce evidence and reveal actions and activities conducted in violation of N.C. General Statute § 14-292. Gambling, § 14-304. Manufacture, sale, etc., of slot machines and devices, § 14-305. Agreements with reference to slot machines or devices made unlawful, § 14-306.1A. Types of machines and devices prohibited by law, § 14-306.4 Electronic machines and devices for sweepstakes prohibited; and other violations of Part 1 of Article 37 A of the North Carolina General Statutes; and that there is probable cause to believe that evidence of the commission of these and other criminal acts as well as fruits and instrumentalities of the crime will be found in the place and the property to be searched.

Based on the totality of the circumstances, a search warrant should be granted to search the location indicated and to seize the items of property indicated and further to search such items, including, but not limited to, documents, records, computer devices, files, and the like, and further, this affiant submits that should the court authorize the search warrant for this location and this property, Bladen County Sheriff's Office personnel may locate and seize a quantity of illegal video gaming instruments, proceeds of illegal gaming, documents showing facilitation and ownership.

**Location to be Searched**

SWORN AND SUBSCRIBED BEFORE ME
THIS _28_ DAY OF _May_____ , 2015.                    _____
                                                                                Affiant

_____    7:00 A/s
Superior Court Judge              Time

Page _8_ of _11_

```
(                              )
(STATE OF NORTH CAROLINA       )
(COUNTY OF BLADEN              )        .  AFFIDAVIT
(                              )
```

.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON
IN CONTROL OF ALADDIN SWEEPSTAKES, 29 THIRD STREET DUBLIN, NC. THE
BUSINESS IS TAN BUILDING WITH GOLD TRIM WITH A RED CENTER WALL AND
HAS SIGNAGE IDENTIFYING AS ALADDIN SWEEPSTAKES ABOVE THE FRONT
ENTRANCE DOOR.



**Items to be Seized and Searched**

SWORN AND SUBSCRIBED BEFORE ME
THIS _28ᵗʰ_ DAY OF _Jan_____ , 2015.

_____
                              (Affiant)

_____    _7:30 PM_
Superior Court Judge         Time

Page _9_ of _11_

```
(                          )
(STATE OF NORTH CAROLINA   )
(COUNTY OF BLADEN          )          AFFIDAVIT
(                          )
```

**.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 29 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH GOLD TRIM WITH A RED CENTER WALL AND HAS SIGNAGE IDENTIFYING AS ALADDIN SWEEPSTAKES ABOVE THE FRONT ENTRANCE DOOR.**

1. Video Gaming machines and other forms of electrical, mechanical, or computer devices as defined under N.C.G.S. 14-306.1A.

2. Financial proceeds, cash, and other assets obtained as a result of dealings in illegal video gaming operations, and any containers, objects, personal property, or the like, which may enclose or contain any such objects.

3. Books, records, receipts, notes, ledgers, and other documents relating to the transportation, ordering, purchasing, and distribution, of illegal video gaming and any containers, objects, personal property, or the like, which may enclose   or contain any such objects.

4. Papers, tickets, notes, schedules, receipts, and other items relating to domestic and foreign travel, and purchase, rental, or lease of automobiles and any containers, objects, personal property, or the like, which may enclose   or contain any such objects.

5. Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's check receipts, bank checks, and other items evidencing the obtaining, secreting, transfer and / or concealment of assets and the obtaining, secreting, transfer, concealment and / or expenditure of money and any containers, objects, personal property, or the like, which may enclose   or contain any such objects.

6. Photographs / Video, in particular photographs / video of co-conspirators, of assets, and/or of illegal video gaming and any containers, objects, personal property, or the like, which may enclose   or contain any such objects.

7. Weapons, particularly firearms, including but not limited to handguns revolvers, semiautomatic pistols, and other automatic and semi-automatic weapons used as protection for illegal video gaming and other related objects.

**Items to be Seized Continuation**

SWORN AND SUBSCRIBED BEFORE ME
THIS 28th DAY OF _____, 2015.          _____
                                                      Affiant

_____   7.00 PM
Superior Court Judge        Time

Page 10 of 11

```
(                                    )
(STATE OF NORTH CAROLINA  )
(COUNTY OF BLADEN            )          AFFIDAVIT
(                                    )
```

.... SEARCH WARRANT IN THE MATTER OF JEFFREY S SMITH OR ANY PERSON IN CONTROL OF ALADDIN SWEEPSTAKES, 29 THIRD STREET DUBLIN, NC. THE BUSINESS IS TAN BUILDING WITH GOLD TRIM WITH A RED CENTER WALL AND HAS SIGNAGE IDENTIFYING AS ALADDIN SWEEPSTAKES ABOVE THE FRONT ENTRANCE DOOR.

8. Items or articles of personal property tending to show ownership dominion, or control of the premises and including keys to the locations to be searched and any containers, objects, personal property, or the like, which may enclose    or contain any such objects.

9. Business and Personal computers, laptop computers, scanners, copiers, monitors, ATM devices, money counters, handheld computers/organizers *(e.g.,* Blackberry, iPhone, iPad, Palm etc.), computer files, indicating access to electronic mail services, hard disks, floppy disks and any other electronic media containing evidence of illegal video gaming and the amassing, transfer, secreting and laundering of money obtained from illegal video gaming to be examined by a competent forensics specialist and any containers, objects, personal property, or the like, which may enclose or contain any such objects.

10. Other fruits and instrumentalities of the crime or crimes.

SWORN AND SUBSCRIBED BEFORE ME
THIS _28_ DAY OF _May_____, 2015.          _____
                                                                                     Affiant

_____        _7:00 P_       
Superior Court Judge                    Time

Page _11_ of _11_

# STATE OF NORTH CAROLINA

**BLADEN** County

**COPY FILED**

2016 JAN -8 P 12: 29

BLADEN COUNTY, C.S.C.

File No.

16 CVS 9

In The General Court Of Justice
☐ District  ☒ Superior Court Division

**Name Of Plaintiff**
CYBERNET LLC, et al

**Address**
248 East Fourth Street

**City, State, Zip**
Dublin                    NC        28332

**CIVIL SUMMONS**

☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3, 4

**VERSUS**

**Name Of Defendant(s)**
JONATHAN DAVID, in his personal capicity and his official capacity as District Attorney for the 13th Prosecutorial District of North Carolina, et al

**Date Original Summons Issued**

**Date(s) Subsequent Summons(es) Issued**

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Jonathan David, District Attorney | James McVicker, Sheriff |
| Bladen County Courthouse, Office of the DA | Bladen County Sheriff's Office |
| 166 East Braod Street #118 | 201 King Street |
| Elizabethtown, NC 28337 | Elizabethtown, NC 28337 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued | Time | ☐ AM ☒ PM |
|---|---|---|---|
| Keith P. Anthony | 1 8 16 | 12:29 | |
| Morningstar Law Group | | | |
| 630 Davis Drive Ste 200 | *Signature* Althea Lesane | | |
| Morrisville, NC 27560 | ☐ Deputy CSC  ☒ Assistant CSC  ☐ Clerk Of Superior Court | | |

| ☐ ENDORSEMENT (ASSESS FEE) This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time | ☐ AM ☐ PM |
|---|---|---|---|
| | *Signature* | | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11                    (Over)
© 2011 Administrative Office of the Courts

**STATE OF NORTH CAROLINA**

COPY
FILED

BLADEN County

2016 JAN -8 P 12: 29

BLADEN COUNTY, C.S.C.

| File No. |
| --- |
| 16 CVS ^C |

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff | |
| --- | --- |
| CYBERNET LLC, et al | |
| Address | |
| 248 East Fourth Street | **CIVIL SUMMONS** |
| City, State, Zip | ☒ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| Dublin                         NC  ℞  28332 | |

**VERSUS**

G.S. 1A-1, Rules 3, 4

| Name Of Defendant(s) | Date Original Summons Issued |
| --- | --- |
| JONATHAN DAVID, in his personal capicity and his officical capacity as District Attorney for the 13th Prosecutorial District of North Carolina. et al | |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| --- | --- |
| Jonathan David, District Attorney | James McVicker, Sheriff |
| Bladen County Courthouse, Office of the DA | Bladen County Sheriff's Office |
| 166 East Braod Street #118 | 201 King Street |
| Elizabethtown, NC 28337 | Elizabethtown, NC 28337 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served.  You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued | Time | |
| --- | --- | --- | --- |
| Keith P. Anthony | 1 8 16 | 12:29 | ☐ AM  ☒ PM |
| Morningstar Law Group | Signature | | |
| 630 Davis Drive Ste 200 | *Althea Lesane* | | |
| Morrisville, NC 27560 | ☐ Deputy CSC  ☒ Assistant CSC  ☐ Clerk Of Superior Court | | |

| ☐ ENDORSEMENT (ASSESS FEE) This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time | ☐ AM ☐ PM |
| --- | --- | --- | --- |
| | Signature | | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial.  The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

(Over)

# STATE OF NORTH CAROLINA

COPY

FILED

_____ BLADEN _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

*Name Of Plaintiff*
CYBERNET LLC, et al

*Address*
248 East Fourth Street

*City, State, Zip*
Dublin                    NC        28332

2016 JUN -8 P 12: 29

BLADEN COUNTY C.S.C.

BY _____ *(illegible)*_____

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3, 4

**VERSUS**

*Name Of Defendant(s)*
JONATHAN DAVID, in his personal capicity and his official
capacity as District Attorney for the 13th Prosecutorial District of
North Carolina, et al

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| Travis Deaver, Deputy Sheriff<br>Bladen County Sheriff Office<br>201 King Street<br>Elizabethtown NC 28337 | |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after
   you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's
   last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>Keith P. Anthony<br>Morningstar Law Group<br>630 Davis Drive Ste 200<br>Morrisville, NC 27560 | *Date Issued*<br>1 8 16 | *Time*<br>12:29 | ☐ AM<br>☒ PM |
|---|---|---|---|
| | *Signature*<br>Althea Loane | | |
| | ☐ Deputy CSC  ☒ Assistant CSC  ☐ Clerk Of Superior Court | | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date<br>indicated above and returned not served. At the request<br>of the plaintiff, the time within which this Summons must<br>be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* | ☐ AM<br>☐ PM |
|---|---|---|---|
| | *Signature* | | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or
less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if
so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

*(Over)*