IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-16-RJ

CYBERNET, LLC and )
ALADDIN REAL ESTATE, LLC, )
                                   )
    Plaintiffs, )
                                   )
      v. )
                                     )
JONATHAN DAVID, *in his personal* )
*capacity and his official capacity as* )
*District Attorney for the 13th Prosecutorial* )    O R D E R
*District of North Carolina*, JAMES )
MCVICKER, *in his personal capacity and* )
*his official capacity as Sheriff of Bladen* )
*County, North Carolina*, and TRAVIS )
DEAVER, *in his personal capacity and his* )
*official capacity as a Deputy Sheriff of* )
*Bladen County, North Carolina*, )
                                     )
    Defendants. )

    This matter comes before the court on the following motions of Defendant Jonathan David:

(1) motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure [DE-12], to which Plaintiffs filed a response in opposition [DE-19] and Defendant filed

a reply [DE-20]; and (2) motion to dispense with mediation [DE-30]. All responsive briefing is

complete, and the matters are ripe for disposition. For the reasons set forth below, the motion to

dismiss [DE-12] is allowed in part and denied in part and the motion to dispense with mediation

[DE-30] is denied as moot.

## I. STATEMENT OF THE CASE

    Cybernet, LLC ("Cybernet") is a North Carolina limited liability company that operates two

retail stores in Dublin, Bladen County, North Carolina, and Aladdin Real Estate, LLC ("Aladdin")

is a North Carolina limited liability company that owns the buildings leased to Cybernet (collectively, "Plaintiffs"). Compl. [DE-1-1] ¶¶ 1-2, 9-10, 12. Plaintiffs filed a verified complaint in the Superior Court of Bladen County against Jonathan David, the District Attorney for the 13th Prosecutorial District of North Carolina ("David" or the "District Attorney"); James McVicker, the Sheriff of Bladen County ("McVicker" or the "Sheriff"); and Travis Deaver ("Deaver"), a Deputy Sheriff of Bladen County. *Id.* ¶¶ 3-5. Plaintiffs assert claims for conversion, declaratory judgment, takings under the United States and North Carolina Constitutions, and deprivation of federal constitutional rights under 42 U.S.C. § 1983, all stemming from the alleged destruction of Plaintiffs' property during the execution of search warrants by the Bladen County Sheriff's Office. *Id.* ¶¶ 144-65. McVicker and Deaver removed the action to this court pursuant to 42 U.S.C. § 1441, invoking the court's federal question jurisdiction. Notice of Removal [DE-1]. The notice indicated "[a]ll defendants consent to the removal . . . ." *Id.* ¶ 7. McVicker and Deaver filed an answer to the complaint [DE-5], and David filed the instant motion to dismiss [DE-12]. The parties thereafter consented to the jurisdiction of a magistrate judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [DE-25 through -28]. The court, on David's motion, stayed discovery in this matter pending ruling on the instant motion to dismiss. [DE-29]. Thereafter, David filed a motion to dispense with mediation pending ruling on the instant motion to dismiss. [DE-30].

## II. STATEMENT OF FACTS

The facts as alleged in the verified complaint are as follows. Cybernet operates two retail stores in Dublin, North Carolina, one at 29 Third Street ("Store One") and the other at 34 Third Street ("Store Two"). Compl. [DE-1-1] ¶¶ 9-10. Cybernet utilizes lawful sweepstakes and other

2

promotions to enhance the sale of products in its retail stores. *Id.* ¶ 11. Cybernet, which is owned by Holly Smith, leases the space for its stores from Aladdin, which is owned by Jeffrey Smith (collectively, the "Smiths"). *Id.* ¶¶ 12-14.

On or about May 29, 2015, Stores One and Two were simultaneously raided, pursuant to search warrants issued by a state superior court judge on May 28, 2016. *Id.* ¶¶ 15-18, Exs. A & B. The District Attorney is believed to have "instigated" the search. *Id.* ¶ 21. Both the District Attorney and the Sheriff were physically present outside Stores One and Two while the search warrants were executed and are believed to have personally observed and directed the execution of the search warrants. *Id.* ¶¶ 19-20. Plaintiffs sustained extensive property damage as a result of the raids, *id.* ¶¶ 30-106, which they believe were executed with excessive force for the purpose of intentionally and maliciously inflicting unnecessary damage and to create maximum publicity and public embarrassment to Plaintiffs, their owners the Smiths, and their employees. *Id.* ¶¶ 26-28, 108, 131-35. Plaintiffs believe the District Attorney seeks to close down all electronic sweepstakes businesses, without regard to the legality of such businesses, and that the raids were conducted to damage Plaintiffs' property and to force them to close their businesses. *Id.* ¶¶ 107-09. Plaintiffs had previously invited the District Attorney and the Sheriff to visit Stores One and Two so that they could view the businesses and the manner in which they are conducted, making the raids unnecessary. *Id.* ¶ 110.

At a subsequent bond hearing for the Smiths, an Assistant District Attorney requested a "sky high" bond for them, and Plaintiffs believe this was done at the direction of the District Attorney. *Id.* ¶¶ 112-13. The Smiths were charged with 16 additional counts several months after the raids, which Plaintiffs believe was to further humiliate the Smiths and to leverage them into closing Stores

One and Two. *Id.* ¶¶ 114-16. Plaintiffs also believe the damage caused during the execution of the search warrants served as retribution for an unsuccessful 2014 prosecution of Jeffrey Smith in connection with a sweepstakes promotion offered in Bladen County. *Id.* ¶¶ 117, 120-21. Plaintiffs do not believe that the alleged damage caused during the raids was due to the rogue actions of the sheriff's deputies, but rather that the District Attorney and the Sheriff were present when the search warrants were executed to view and direct the destruction of Plaintiffs' property. *Id.* ¶¶ 125-27, 130. After the execution of the search warrants, the District Attorney held a press conference regarding his efforts to eliminate the use of sweepstakes promotions in Bladen County and praised the manner in which the Sheriff's Office conducted the raids. *Id.* ¶¶ 136-37, 139-40.

### III. STANDARD OF REVIEW

**A.      Rule 12(b)(1)—Lack of Subject Matter Jurisdiction**

Pursuant to Rule 12(b)(1), a court must dismiss all or part of an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Whether subject matter jurisdiction exists is a threshold question that must be addressed by the court before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff, as the party opposing a Rule 12(b)(1) motion to dismiss, has the burden of proving that subject matter jurisdiction does, in fact, exist. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citations omitted).

4

**B.      Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim upon which Relief can be Granted**

Pursuant to Rule 12(b)(6), a court may dismiss an action which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the sufficiency of the facts pleaded in the complaint and the relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, a court is required to consider the complaint in the light most favorable to the plaintiff and to accept as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). However, Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 93 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## IV. DISCUSSION

### A.     Motion to Dismiss

#### 1.     Sovereign Immunity

The District Attorney contends he is immune from suit under the Eleventh Amendment and common law sovereign immunity and there are no allegations that could be construed as actions outside of his official duties. Def.'s Mem. [DE-13] at 7-8. Plaintiffs respond that sovereign immunity does not bar individual capacity claims, the District Attorney waived any Eleventh Amendment sovereign immunity defense by consenting to the removal of this case to federal court, and the takings claims under the North Carolina and United States Constitutions are excepted from the bar of sovereign immunity. Pls.' Mem. [DE-19] at 6-9.

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Likewise, "North Carolina has a well-established common law doctrine of sovereign immunity which prevents a claim for relief against the State except where the State has consented or waived its immunity." *DeMurry v. N.C. Dep't of Corr.*, 195 N.C. App. 485, 492, 673 S.E.2d 374, 380 (2009) (citations omitted). This immunity from suit applies not only to the State itself, but also to claims against state agencies and state officials acting in an official capacity. *See Myers v. North Carolina*, No. 5:12-CV-714-D, 2013 WL 4456848, at *3 (E.D.N.C. Aug. 16, 2013) (unpublished) ("State agencies and state officials acting in their official capacities also are protected against a claim for damages because a suit against a state office is no different from a suit against the state itself.") (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Edelman v. Jordan*, 415 U.S. 651, 666-68 (1974);

*Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005));

*DeMurry*, 195 N.C. App. at 493. However, sovereign immunity may be waived or abrogated. *See*

*Snow v. N.C. Dep't of Health & Human Servs.*, No. 5:12-CV-724-FL, 2014 WL 808646, at \*6-7

(E.D.N.C. Feb. 28, 2014) (unpublished) (discussing exceptions to the doctrine of state sovereign

immunity); *DeMurry*, 195 N.C. App. at 493. Neither the Eleventh Amendment nor common law

sovereign immunity bar suits in federal court seeking to impose individual liability on individual

state officials. *Hafer v. Melo*, 502 U.S. 21, 30 (1991) ("Insofar as respondents seek damages against

[a state official] personally, the Eleventh Amendment does not restrict their ability to sue in federal

court."); *Maisha v. Univ. of N.C.*, No. 1:12-CV-371, 2013 WL 1232947, at \*4 (M.D.N.C. Mar. 27,

2013) (unpublished) (denying as futile motion to amend to add official capacity claim for conversion

because North Carolina has not waived sovereign immunity for the intentional tort of conversion,

but allowing amendment to assert conversion claim against defendants in their individual capacities)

(citation omitted), *aff'd*, 641 F. App'x 246 (4th Cir. Mar. 17, 2016).

There is some dispute between the parties regarding the capacity in which Plaintiffs' claims

are asserted. Plaintiffs state in their memorandum in opposition to the motion to dismiss that they

assert the conversion, declaratory judgment, and section 1983 claims against the District Attorney

only in his individual capacity, and the takings claims are asserted against him in both his official

and individual capacities.[1] Pl.'s Mem. [DE-19] at 8 n.2. The Fourth Circuit has held that, although

preferable, "a plaintiff need not plead expressly the capacity in which he is suing a defendant in order

to state a cause of action under § 1983." *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995) (citing

---

[1] The District Attorney, in his reply, misquotes Plaintiffs' statement as to the capacity in which their claims are asserted. *See* Def.'s Reply [DE-20] at 10 (stating Plaintiffs' "conversion, declaratory judgment, and Section 1983 claims are being asserted against him in both his official capacity and his individual capacity").

*Hafer*, 502 U.S. at 24 n.*). In the absence of a party expressly pleading capacity, the court looks to the course of proceedings to make such a determination. *Id.* at 61.

Here, the fact the Plaintiffs have failed to plead that the District Attorney "acted in accordance with a governmental policy or custom" supports a finding that the claims are asserted against the District Attorney in his individual capacity. *Id.* Additionally, the fact that the District Attorney asserted absolute prosecutorial and qualified immunity somewhat supports this finding, because those defenses are only available in a personal capacity suit, although the District Attorney also asserted Eleventh Amendment immunity, which is only available in an official capacity suit. *Id.* (citation omitted). Plaintiffs indicate in the case caption that the claims are asserted against the District Attorney in both his official and personal capacities. Compl. [DE-1-1]. A fair reading of the complaint indicates Plaintiffs' claims for conversion, declaratory judgment, and violation of section 1983 are asserted against the District Attorney in his individual capacity and Plaintiffs' takings claims are asserted against the District Attorney in his official capacity. To the extent Plaintiffs seek to assert an individual capacity takings claim, it is subject to dismissal for failure to state a claim, "because takings actions sound against governmental entities rather than individual state employees in their individual capacities . . . ." *Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. Feb. 20, 2002) (unpublished) (per curiam) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 687 (1978); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

### i.    Official Capacity Claims

Plaintiffs argue that official capacity takings claims are excepted from the bar of sovereign immunity. Pls.' Mem. [DE-19] at 7-8. The Fourth Circuit has declined to recognize an exception under the Eleventh Amendment for claims brought under the Takings Clause of the Fifth

8

Amendment to the United States Constitution where the state has recognized "a right of persons to sue the State for unconstitutional takings," noting that "every other court of appeals to have decided the question has held that the Takings Clause does not override the Eleventh Amendment." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 553 (4th Cir. 2014) ("[W]e reject the plaintiffs' argument that their claims under the Takings Clause of the Fifth Amendment are exempt from the protection of the Eleventh Amendment.") (citations omitted). North Carolina law does recognize "an unconstitutional taking claim based on the Law of the Land Clause of the North Carolina Constitution, which has been used in our State to allow 'taking challenges on the basis of constitutional and common-law principles.'" *Adams v. State*, — S.E.2d —, —, 2016 WL 4087482, at *5 (N.C. Ct. App. Aug. 2, 2016) (unpublished) (quoting *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 179, 594 S.E.2d 1, 14 (2004) & citing N.C. Const., art. I, § 19). Furthermore, the North Carolina Supreme Court has held that sovereign immunity cannot bar such claims that are protected by the Declaration of Rights in the North Carolina Constitution. *See Al-Nasra v. Cleveland Cnty.*, 202 N.C. App. 584, 2010 WL 520909, at *6-7 (Feb. 16, 2010) (unpublished) (holding the trial court properly denied defendant's motion for summary judgment on the grounds of sovereign immunity as to plaintiff's claims based on condemnation and unlawful taking in violation of North Carolina Const. art. I, § 19) (citing *Corum v. University of N.C.*, 330 N.C. 761, 785-86, 413 S.E.2d 276, 291 (1992)). Accordingly, sovereign immunity bars the takings claim under the United States Constitution but not under the North Carolina Constitution.

## ii. Individual Capacity Claims

The District Attorney's assertion that there are no allegations that could be construed as actions taken outside of his official duties does not justify the application of sovereign immunity to

9

the individual capacity claims. The Supreme Court expressly rejected such an interpretation in *Hafer*, explaining that "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." 502 U.S. at 26 (declining to adopt, as both unpersuasive and contrary to precedent, the proposition that an official "may not be held personally liable under § 1983 for discharging respondents because she 'act [ed]' in her official capacity as auditor general of Pennsylvania."). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, [o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 25 (citation and internal quotation marks omitted); *see Gentile v. Brunswick Cnty. Sheriff's Dep't*, No. 7:13-CV-81-FL, 2014 WL 1331159, at \*9 (E.D.N.C. Apr. 2, 2014) (unpublished) (rejecting argument that Eleventh Amendment and common law sovereign immunity barred individual capacity claims against an assistant district attorney because plaintiffs made no allegations that could be construed as actions allegedly taken outside of her official duties). Rather, immunity from individual capacity claims is addressed through "personal immunity jurisprudence," such as the doctrines of absolute or qualified immunity. *Hafer*, 502 U.S. at 31 (citing *Forrester v. White*, 484 U.S. 219, 223 (1988)). Accordingly, sovereign immunity does not bar the individual capacity claims against the District Attorney.

## 2.    Collateral Attack

The District Attorney contends Plaintiffs seek to impermissibly use a federal civil action to attack a state-issued search warrant and state criminal court matters involving Jeffrey Smith. Def.'s Mem. [DE-13] at 8-11. Plaintiffs respond that they do not seek to collaterally attack any state court

10

proceeding, but rather only seek to remedy the "unlawful and unconstitutional destruction" of Plaintiffs' property. Pls.' Mem. [DE-19] at 9-10.

Plaintiffs did plead facts regarding Jeffrey Smith in the complaint, such as his ownership of Aladdin, the high bond request for the Smiths, and the 16 additional counts brought against the Smiths several months after the raids. Compl. [DE-1-1] ¶¶ 14, 112-16. However, these facts were alleged in support of Plaintiffs' theory that the damage caused during execution of the search warrants was intentional and malicious, serving as retribution for a prior unsuccessful prosecution of Jeffrey Smith. *Id.* ¶¶ 117, 120-21. Plaintiffs' actual claims are each directed to the destruction of Plaintiffs' property during the execution of search warrants and do not seek to undermine any state criminal court judgment. *Id.* ¶¶ 144-65. Nor do Plaintiffs' claims challenge the validity of the search warrants authorizing the raids, but rather are directed to the manner in which they were executed. *Id.* The case of *Whedbee v. Powell*, 41 N.C. App. 250, 255, 254 S.E. 2d 645, 648 (1979), cited by the District Attorney for the proposition that a civil court cannot grant relief from a criminal court judgment is inapposite, where the present proceeding presents no challenge to any criminal court judgment.

Likewise, the *Rooker-Feldman* doctrine is no bar to Plaintiffs' claims. Under the *Rooker-Feldman* doctrine, federal courts lack subject-matter jurisdiction to sit in appellate review of judicial determinations made in state courts. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). Jurisdiction to review such decisions lies with superior state courts and, ultimately, the United States Supreme Court. *See* 28 U.S.C. § 1257(a). "The *Rooker-Feldman* bar extends not only to issues actually presented to and decided by a state court, but also to issues that are 'inextricably intertwined' with questions ruled on by a state

court." *Brumby v. Deutsche Bank Nat'l Trust Co.*, No. 1:09-CV-144, 2010 WL 617368, at *2, (M.D.N.C. Feb. 17, 2010) (unpublished) (citing *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)). "A federal claim is 'inextricably intertwined' with a state court decision where, 'in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual.'" *Id.* (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997)); *see also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (noting that *Rooker-Feldman* operates as a bar "[i]f the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling").

*Rooker-Feldman's* application is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This is not such a case. Rather, this case seeks a determination of whether the manner in which the search warrants were executed violated Plaintiffs' constitutional rights or state law. *See Lane v. Anderson*, No. 15-2153, 2016 WL 4376426, at *3 (4th Cir. Aug. 17, 2016) (unpublished) (per curiam) (holding claims not barred by *Rooker-Feldman* where the appellant's complaint did not allege the state-court decision or judgment caused the injury, but rather that the sheriff caused the injury). As explained above, this case does not seek to challenge any state court judgment, nor would a ruling in Plaintiffs' favor require a determination that would render any judgment or the search warrants ineffectual. This also distinguishes the instant case from *Dye v. Hatfield*, cited by the District Attorney, wherein the court applied *Rooker-Feldman* to the plaintiffs' alleged civil rights claims that collaterally attacked "decisions of the North Carolina

12

state courts in civil and criminal matters related to Plaintiff Dye's parental rights and legal obligations for the care, custody, and support of [the children]." No. 1:03CV01077, 2004 WL 3266029, at *3 (M.D.N.C. Aug. 26, 2004) (unpublished). Finally, the record currently before the court does not reflect that Plaintiffs were parties to any prior state court criminal proceeding. *See Holliday Amusement Co. of Charleston v. State of South Carolina*, 401 F.3d 534, 538 (4th Cir. 2005) ("[T]he Rooker-Feldman doctrine is inapplicable in instances in which the person asserting the claim in federal court was not a party to the state proceeding.") (citing *Barefoot v. City of Wilmington*, 306 F.3d 113 (4th Cir. 2002); *Gross v. Weingarten*, 217 F.3d 208 (4th Cir. 2000)). Accordingly, this action is not an improper collateral attack on a state court proceeding and *Rooker-Feldman* does not bar consideration of Plaintiffs' claims.

### 3. Absolute Immunity

The District Attorney contends absolute immunity bars the claims in this case because the actions he is alleged to have taken were within the performance of his professional duties as a prosecutor. Def.'s Mem. [DE-13] at 11-17. Plaintiffs respond that the District Attorney's actions related to execution of the search warrants, such as providing advice to law enforcement and participating in search and seizure operations, are not protected by absolute immunity. Pls.' Mem. [DE-19] at 13-14.

Prosecutors are absolutely immune from liability when carrying out "prosecutorial functions," which are those activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Brunson v. N.C. Dep't of Soc. Servs.*, No. 5:09-CT-3063-FL, 2010 WL 3239030, at *3 (E.D.N.C. Aug. 13, 2010) (unpublished) ("The line between prosecutorial functions, which are protected by absolute immunity, and

13

investigative functions, which are protected by only qualified immunity, is drawn at the point of probable cause.") (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993)). This is so despite the harsh result of the application of absolute immunity in certain situations. *See Brunson*, 2010 WL 3239030, at \*2 ("To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest.") (quoting *Imbler*, 424 U.S. at 427). The *Imbler* court recognized a number of considerations supporting absolute prosecutorial immunity, including "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties"; "the possibility that [the prosecutor] would shade his decisions instead of exercising the independence of judgment required by his public trust"; "a virtual retrial of the criminal offense in a new forum, and the resolution of some technical issues by the lay jury"; and the risk that in post-conviction proceedings the focus of the reviewing judge or tribunal may be "blurred by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment." 424 U.S. at 422-27. Nevertheless, the Supreme Court has been "quite sparing" in recognizing absolute immunity and has "refused to extend it any further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991) (citations and internal quotation marks omitted). Furthermore, there is a presumption that qualified rather than absolute immunity is appropriate. *Id.* at 486-87; *Goldstein v. Moatz*, 364 F.3d 205, 212 (4th Cir. 2004). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486.

14

Much of the District Attorney's argument here focuses on his decisions related to bail, pursuing additional criminal charges against Jeffrey Smith, and making statements to the press. Def.'s Mem. [DE-13] at 12-15. However, Plaintiffs' claims stem from the District Attorney's alleged participation in the execution of search warrants that resulted in the destruction of Plaintiffs' property, Compl. [DE-1-1] ¶¶ 144-65, and not the District Attorney's decisions related to bail, pursuing additional criminal charges against Jeffrey Smith, or statements to the press. Turning to the alleged conduct at issue, there is no support at this stage of the litigation for the application of prosecutorial immunity where the District Attorney's alleged actions fall outside the traditional functions of a prosecutor. In *Buckley*, the Supreme Court in discussing the function test of *Imbler* explained that

> [t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. *Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.*

509 U.S. at 273-74 (emphasis added) (internal quotation marks and citations omitted). The Court expressly rejected, as contrary to *Imbler*, the lower court's holding that the prosecutors were "entitled to absolute immunity because the injuries suffered by petitioner occurred during criminal proceedings." *Id.* at 271.

Here, Plaintiffs allege that the District Attorney instigated the search of Plaintiffs' property, was physically present outside Stores One and Two while the search warrants were executed, and personally observed and directed the execution of the search warrants with the malicious intent to

15

cause damage to Plaintiffs' property and to force them to close their businesses. *Id.* ¶¶ 19-21, 26-28, 109. The allegations do not challenge the District Attorney's actions in obtaining the search warrants, but rather focus on his role in executing them. *See Burns*, 500 U.S. at 487 (holding a prosecutor's actions of appearing before a judge and presenting evidence in support of a motion for a search warrant were protected by absolute immunity, but noting that the petitioner challenged only the prosecutor's participation in the hearing, and not his motivation in seeking the search warrant or his conduct outside of the courtroom relating to the warrant); *Torres v. Goddard*, 793 F.3d 1046, 1054-55 (9th Cir. 2015) (holding that a prosecutor's service and execution of warrants was not protected by absolute prosecutorial immunity, because "[s]erving and executing seizure warrants are the functions of police officers, not the 'traditional functions of an advocate . . . .'") (quoting *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997)); *Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir. 1987) (recognizing absolute immunity is not available to a prosecutor assisting in the execution of a search or seizure) (citations omitted). Accordingly, considering the allegations of the complaint in the light most favorable to Plaintiffs and accepting as true all well-pleaded factual allegations, *Randall*, 30 F.3d at 522, a finding that the District Attorney's conduct as alleged is protected by absolute immunity is not warranted at this time.

### 4. Qualified Immunity

The District Attorney, alternatively, contends that he is protected by qualified immunity as to Plaintiffs' claims regarding his statements to the press. Pl.'s Mem. [DE-13] at 22-24. Additionally, he argues that there was no constitutional violation to support a section 1983 malicious prosecution claim because there was probable cause to support the search warrants and the previous prosecution of Jeffery Smith. *Id.* at 23-24. Plaintiffs respond that they have sufficiently alleged facts

16

to establish a constitutional violation of a clearly established right and that, in any event, a determination on qualified immunity at this stage of the proceeding is premature. Pls.' Resp. [DE-19] at 14-16.

"Generally, qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015) (citation omitted). "The protection extends to all but the plainly incompetent or those who knowingly violate the law." *Id.* at 881 (citation and internal quotation marks omitted). The Fourth Circuit has "emphasized repeatedly, '[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Id.* (citations omitted). The qualified immunity analysis considers "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id.* (citations omitted). However, the court need not address both inquiries and can take them in "the order . . . that will best facilitate the fair and efficient disposition of each case." *Id.* (citation omitted).

Plaintiffs have not asserted a claim based on the District Attorney's statements to the press or a claim for malicious prosecution. Compl. [DE-1-1] ¶¶ 144-65. Plaintiffs' claims are based on the District Attorney's alleged participation in the execution of search warrants that resulted in the destruction of Plaintiffs' property. *Id.* The Supreme Court has recognized that "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). "The right to be free from an unreasonably destructive search was clearly established by Supreme Court precedent." *Wood v. Se. Penn. Transp.*

*Auth.*, No. CV 14-4183, 2016 WL 2619411, at *7 (E.D. Pa. May 6, 2016) (unpublished). Plaintiffs have sufficiently alleged a Fourth Amendment violation of a clearly established right.

Plaintiffs allege that the District Attorney instigated the search of Plaintiffs' property, was physically present outside Stores One and Two while the search warrants were executed, and personally observed and directed the execution of the search warrants with the malicious intent to cause damage to Plaintiffs' property and to force them to close their businesses. Compl. [DE-1-1] ¶¶ 19-21, 26-28, 109; *see Adams v. Orange Cnty. of New York*, No. 13 CV 8549 VB, 2015 WL 5459794, at *4 (S.D.N.Y. Sept. 1, 2015) (unpublished) (allowing claim to proceed for Fourth Amendment violation during search of plaintiff's home where defendant officers were alleged to have intentionally destroyed and stolen property, and concluding a finding that the officers were entitled to qualified immunity was not appropriate at the motion to dismiss stage based on the facts alleged); *Carr v. Metro. Law Enf't Council, Inc.*, No. CIV.A. 13-13273-JGD, 2014 WL 4185482, at *13 (D. Mass. Aug. 20, 2014) (unpublished) (determination that qualified immunity protected officers against claim for excessive force in the search of a home was not warranted on motion to dismiss where factual issues required further development of the record as to what actually occurred). Accordingly, at this stage of the case and based on the facts as alleged, a finding that the District Attorney is entitled to qualified immunity is not warranted.

### 5. Public Official Immunity

The District Attorney contends that Plaintiffs' allegation that the District Attorney proceeded against the electronic sweepstakes businesses without regard to their legality "to some degree accuses the District Attorney of negligence," and that such negligence claims are barred by public official immunity. Pls.' Mem. [DE-13] at 25. Plaintiffs respond that they have alleged the

18

destruction of their property was done maliciously and outside the scope of the District Attorney's official duties and that, in any event, public official immunity does not apply to section 1983 cases. Pls.' Mem. [DE-19] at 16-17.

Under North Carolina law, public official immunity precludes state law claims against public officials in their individual capacities "unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Wilcox v. City of Asheville*, 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012) (citation omitted). "Public officials cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties," but instead are liable only where their actions were "corrupt or malicious, or . . . outside of and beyond the scope of [their] duties." *Meyer v. Walls*, 347 N.C. 97, 112, 489 S.E.2d 880, 888 (1997).

Plaintiffs have asserted a state law claim for conversion. Compl. [DE-1-1] ¶¶ 144-49. Plaintiffs allege that the District Attorney's actions related to the execution of the search warrants, resulting in damage to Plaintiffs' property, was intentional, malicious, and for an improper purpose, and have not alleged mere negligence. *Id.* ¶¶ 26-28, 107-43; *see Ingram v. Kerr*, 120 N.C. App. 493, 497, 462 S.E.2d 698, 701 (1995) (denying motion to dismiss based on public official immunity where the plaintiff's allegations demonstrated malicious intent and conduct outside the scope of the officer's official duties). Accordingly, the dismissal of the state law conversion claim based on public official immunity is not warranted.

### 6. Failure to State a Claim

The District Attorney generally contends, without addressing the specific elements of the claims asserted, that Plaintiffs' allegations fail to state a plausible claim for civil harm. Def.'s Mem.

19

[DE-13] at 17-22. Plaintiffs respond that the facts alleged sufficiently state claims for relief based on the destruction of their property under the direction of the District Attorney. Pls.' Mem. [DE-19] at 10-12.

As an initial matter, the District Attorney's arguments regarding the legality of the search warrants and electronic sweepstakes games, a corporation's ability to file a representative suit for a nonparty criminal defendant, and the prerequisites for bringing a malicious prosecution claim are misplaced. Def.'s Mem. [DE-13] at 19-21, 25-27. The legality of the search warrants is not at issue here. As explained above, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *Ramirez*, 523 U.S. at 71. Said another way, a valid search warrant may be executed in such a manner as to violate the Fourth Amendment. Likewise, Plaintiffs' claims related to the destruction of property during the execution of the search warrants do not turn on the legality of sweepstakes games. Finally, the Plaintiff entities' claims are for damage to their property and are not brought on behalf of Jeffrey Smith, and Plaintiffs have not asserted a malicious prosecution claim.

Next, the District Attorney argues that because many of Plaintiffs' allegations are based "upon information and belief," the allegations "provide insufficient detail to support a civil suit against anyone, much less a District Attorney[.]" Def.'s Mem. [DE-13] at 21. The court is aware of no authority supporting a heightened pleading standard for claims against district attorneys, and the District Attorney has cited none. Applying the pleading requirements of Rule 8, as delineated in *Iqbal* and *Twombly*, Plaintiffs have provided fair notice of the claims asserted and the grounds upon which they rest. Plaintiffs plainly allege that the District Attorney, along with the Sheriff,

20

directed sheriff's deputies to use excessive force to destroy Plaintiffs' property during the execution of two search warrants, and assert claims for conversion, declaratory judgment, an unconstitutional taking, and violation of section 1983. Compl. [DE-1-1] ¶¶ 15-29, 144-65. Many of the allegations asserted "upon information and belief" relate to the motives or knowledge of the District Attorney and others or are facts otherwise controlled by Defendants. *Id.* ¶¶ 20-21, 25, 28, 57, 89, 103, 107-09, 113, 116-17, 125-31, 133-34, 141-42; *see Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015) ("A plaintiff is generally permitted to plead facts based on 'information and belief' if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant.") (citing *Raub v. Bowen,* 960 F. Supp. 2d 602, 615 (E.D. Va. 2013) (noting that although "information and belief" pleadings are "tenuous at best," such practice is permitted under Rule 8(a) when relying "on second-hand information to make a good-faith allegation of fact"); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant") (internal quotation marks and citation omitted); 2–8 *Moore's Federal Practice* § 8.04[4] (3d ed.) ("Nothing in the *Twombly* plausibility standard prevents a plaintiff from pleading on information and belief.")). Accordingly, under the circumstances presented, the use of "upon information and belief" does not justify the dismissal of Plaintiffs' claims.

The District Attorney also specifically contends that there is no case law to support a claim against a district attorney for conversion of property seized by sheriff's deputies pursuant to a valid search warrant during a pending criminal case. Def.'s Mem. [DE-13] at 21-22. Plaintiffs' claims, however, are based on the destruction, not the seizure, of their property. To state a claim for

21

conversion under North Carolina law, a plaintiff must demonstrate "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Bartlett Milling Co., v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 488 (2008) (citation omitted). "[T]wo essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant." *Id.*, 665 S.E.2d at 489 (citation omitted). As Plaintiffs note, the North Carolina Court of Appeals has expressly held that sheriffs in North Carolina may be held liable for conversion and, in doing so, stated that "[p]ublic officials enjoy no special immunity for unauthorized acts, or acts outside their official duty." *Gallimore v. Sink*, 27 N.C. App. 65, 68, 218 S.E.2d 181, 183 (1975). In the present case, Plaintiffs allege that the District Attorney, acting in concert with the Sheriff, directed the unlawful destruction of property owned by Plaintiffs during the execution of two search warrants. Compl. [DE-1-1] ¶¶ 19-21, 26-28, 144-49. These allegations are sufficient to state a plausible claim for conversion.

To the extent the District Attorney seeks to dismiss Plaintiffs' section 1983 claim for failure to state a claim, Def.'s Mem. [DE-13] at 27, Plaintiffs have sufficiently stated such a claim. Section 1983 imposes liability on anyone who, under the color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, section 1983 is not a "source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (citations omitted). Thus, to state a claim under § 1983, a plaintiff must allege facts indicating a deprivation of rights guaranteed by the Constitution and laws of the United States and that this deprivation resulted from conduct

committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).

Plaintiffs allege the District Attorney violated their Fourth, Fifth, and Fourteenth Amendment rights by directing the use of excessive force by officers executing search warrants resulting in the destruction of Plaintiffs' property. Compl. ¶¶ 19-21, 26-28, 109. Federal courts have recognized that such conduct may constitute a Constitutional violation cognizable under section 1983. *See Ramirez*, 523 U.S. at 71 ("Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment . . . ."); *Wood*, 2016 WL 2619411, at *6 (rejecting qualified immunity defense and denying summary judgment to defendants on section 1983 claim, where during a lawfully initiated automobile search the officers caused unreasonable property damage); *Koller v. Hilderbrand*, 933 F. Supp. 2d 272, 278 (D. Conn. 2013) (stating the standard of liability for a section 1983 claim under the Fourth Amendment for property damage during a lawful search) (quoting *Cody v. Mello*, 59 F.3d 13, 16 (2d Cir. 1995) (stating the standard for a due process claim for property damage during a lawful search)). The case of *Bailey v. Duesler*, No. 05CV2003 BTM(CAB), 2006 U.S. Dist. LEXIS 86722 (S.D. Cal. Nov. 28, 2006) (unpublished), cited by the District Attorney in support of the proposition that "excessive force against property" is not a claim, in fact, does not counsel dismissal of Plaintiffs' section 1983 claim. The *Bailey* court recognized that allegations of property destruction during a search incident to arrest may constitute a Fourth Amendment violation, acknowledging precedent from the Ninth Circuit Court of Appeals that "use of excessive force in the execution of a valid search warrant may violate the *Fourth Amendment*." *Id.* at *14 (citing *Chuman v. Wright*, 76 F.3d 292, 293 (9th Cir. 1996)). The court then found that

23

the plaintiff failed to raise a genuine issue of material fact and dismissed the claim on summary judgment. *Id.* at *15. The court distinguished any claim that the plaintiff's property was damaged *subsequent* to the search as falling outside the scope of the Fourth Amendment, *id.* at *15 n.1, however, that portion of the ruling is not applicable to this case where Plaintiffs allege their property was damaged *during* the execution of the search warrants. Accordingly, Plaintiffs' allegations sufficiently state a plausible claim under section 1983.

## B.     Motion to Dispense with Mediation

The District Attorney moves to dismiss with mediation in this matter pending the court's resolution of the motion to dismiss. [DE-30]. The motion is denied as moot.

In conformity with the court's April 6, 2016 order [DE-29], the parties shall file an amended proposed discovery plan, to include a deadline for mediation, within **14 days** of the date of this order.

## V.  CONCLUSION

Fore the reasons stated herein, Defendant's motion to dismiss [DE-12] is ALLOWED IN PART AND DENIED IN PART as follows:  Plaintiffs' takings claim under the United States Constitution and individual capacity takings claim under the North Carolina Constitution against the District Attorney are DISMISSED, and Plaintiffs' official capacity takings claim under the North Carolina Constitution and individual capacity claims for conversion, a declaratory judgment, and a violation of 42 U.S.C. § 1983 against the District Attorney shall be allowed to proceed. Defendant's motion to dispense with mediation [DE-30] is DENIED AS MOOT.

24

SO ORDERED, the 19th day of September 2016.

Robert B. Jones, Jr.
United States Magistrate Judge