IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:16-cv-00016-RJ

| | |
|---|---|
| CYBERNET LLC; and ALADDIN REAL ESTATE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JONATHAN DAVID, in his personal capacity and his official capacity as District Attorney for the 13th Prosecutorial District of North Carolina; JAMES McVICKER, in his personal and his official capacity as Sheriff of Bladen County, North Carolina; and TRAVIS DEAVER, in his personal and official capacity as a Deputy Sheriff of Bladen County, North Carolina, <br><br> Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL

Plaintiffs Cybernet LLC and Aladdin Real Estate, LLC, by and through counsel, submit this memorandum of law pursuant to Local Civil Rule 7.2 in support of their Motion to Compel responses to deposition questions pursuant to Rule 37 of the Federal Rules of Civil Procedure.

## NATURE OF THE CASE

Plaintiffs claim multiple violations of their constitutional and other legal rights by Defendants. Relevant to this Motion, Plaintiffs claim that the defendant Office of the District Attorney for the 13th Prosecutorial District of North Carolina, under the direction of defendant Jonathan David, exceeded the scope of its authority and violated Plaintiffs' rights by maliciously and intentionally participating in damaging Plaintiffs' property in the execution of search warrants (the "raids") that caused over $10,000 in damages. (Cmplt., 2/2/16, ¶¶ 107-09 [ECF 1-

1]) Among other claims, Plaintiffs assert that Defendants intentionally caused Plaintiffs such suffering and public humiliation in order to force Plaintiffs to close their businesses. (*Id.*)

## RELEVANT FACTS

On 30 August 2017 and 7 September 2017, Plaintiffs took the depositions of two former assistant district attorneys who were present for the raids and otherwise were involved in the events at issue: Glenn Emery and Irene Riel. During the depositions of these assistant district attorneys, counsel for defendant Jonathan David instructed the witnesses not to answer more than 65 questions. Many of the questions sought information about the express allegations made in the Complaint. The instructions not to answer were based on assertions of "office policy," work-product, attorney-client privilege, and law enforcement privilege. Mr. David, through counsel, has failed and refused to supply information sufficient to determine whether any recognized privilege applies—in the deposition, in responding to written discovery, or in the process of meeting and conferring in an effort to avoid the filing of this motion.

## ARGUMENT

**I. DEFENDANT'S FAILURE TO PRODUCE INFORMATION SUFFICIENT TO SUPPORT ASSERTION OF A PRIVILEGE FORFEITS ANY PRIVILEGE.**

The party claiming that its information is shielded from discovery by a privilege bears burden of demonstrating that the privilege applies. *See Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011) (proponent of work product protection bears the burden); *Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.,* 613 F. Supp. 2d 670, 721 (D. Md. 2008) (evaluating assertion of attorney-client privilege and work-product, and finding that objecting party "did not do what the law clearly requires a party who is asserting privilege to do: demonstrate that all elements of the privilege have been met").

Mr. David has not, and cannot, substantiate the basis of the instruction not to answer over 60 questions that go to the heart of whether his office acted with malice and intent to violate the rights of Plaintiffs and their owners, the Smiths. Of those questions, at least 32 simply sought a "yes" or "no" answer, which the witness was instructed not to give—so that even the most basic information about the shielded subject has not been provided. (*E.g.,* Motion Ex. 2, Riel Dep. at 26, 28, 29, 30, 43, 44, 45-46, 49-50, 51, 56, 57, 58, 61, 62, 66, 67, 78, 79, 83, 84; Motion Ex. 1, Emery Dep. at 61, 62, 69-70, 77, 78, 91, 115, 258, 265, 270, 279, 299.)

Indeed, counsel for Mr. David specifically rejected the request to supply the basis for the objection, and information that would be sufficient to determine if the privilege applied. (Motion Ex. 2, Riel Dep., at 50-51.) Similarly, the information to substantiate the privilege was not available from written discovery responses, as no privilege log was produced for the privilege objections asserted against all but one interrogatory and against 10 of 19 document requests. <u>Exhibit A</u>, Response to Plaintiffs' First Set of Interrogatories, and Requests for Production of Documents to Defendant District Attorney Jonathan David, 6/28/2017, Interog. Nos. 1-6, 7-9 & Doc. Req. Nos. 8-17.)

This Court should conclude that the failure to articulate the grounds for the objections asserted—during the deposition and in the opportunities to do so since—constitutes either a forfeiture of any privilege or a failure to sustain the burden to demonstrate the privilege applies. *See Solis,* 644 F.3d at 233 *(*concluding that proponent of work product doctrine had failed to meet its burden to demonstrate applicability of doctrine when it refused to provide information normally required by privilege log); *see Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 420 (D. Md. 2005) (by failing to explain how documents were privileged, "the defendants clearly forfeited any privilege they might have

had"); *also id.* at 403 ("defendants' failure [to supply a privilege log] ultimately is their own loss, but that failure has complicated and prolonged the resolution of the dispute and required expenditure of significant judicial resources"); *id.* at 418 ("the Court will not speculate as to the reasons the documents were created or construct a scenario under which the documents could arguably privileged [;] . . . the proponent must provide specific factual support for its assertion").

## II. THE INSTRUCTIONS NOT TO ANSWER WERE IMPROPER.

### A. The Instructions Not To Answer Based on "Office Policy" Are Without Basis.

Mr. David's counsel instructed the witness not to answer approximately 20 deposition questions based on "office policy" or a "policy issue." (Motion Ex. 1, Emery Dep., at 92; Motion Ex. 2, Riel Dep., at 28-30, 33-36, 39-40, 41-46, 56-57, 61, 66-67, 79, 81, 83, 84) The questions generally sought information regarding whether the actions taken in this case comport with the usual practices of the office of the district attorney, the usual level of and practices of communication with Mr. David regarding actions taken by that office, Ms. Riel's resignation from the office and related activities. Mr. David's position that there is an "office policy" privilege that shields this type of information in civil cases alleging that the office has exceeded its authority and acted with malice is without legal basis.

In a deposition, "lawyers may not instruct witnesses not to answer questions during a deposition unless to assert a privilege." *Neuberger*, 230 F.R.D. at 420. "Obviously, if a privilege is asserted as a reason to not answer, it must be a recognized privilege." *Id.* at 421. "Office policy" is not a recognized privilege and therefore is not a basis to instruct a witness not to answer.

In support of this instruction, Mr. David's counsel relied on precedent holding that a prosecutor in a criminal case is not required to produce internal policies regarding prosecution

4

4844-4201-0449, v. 2

Case 7:16-cv-00016-RJ   Document 75   Filed 10/18/17   Page 4 of 19

programs to a criminal defendant to comply with its statutory discovery duties. *State v. Rudolph*, 39 N.C. App. 293, 399, 250 S.E.2d 318 (1979). That case does not address privilege. It addresses whether the production of internal policies was merely voluntary or was required for the prosecution to comply with its broad statutory duties to provide discovery to a defendant. *See* N.C. Gen. Stat. § 15A-901 through §15A-910. Accordingly, the instructions not to answer based on "office policy," which is not a privilege, were manifestly improper. Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)"). The Court therefore should strike the "office policy" objections and order that the questions be answered.[1]

### B. The Instructions Not to Answer Based on "Work Product" Are Without Merit.

The work-product doctrine protects an attorney's "mental processes . . . , providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238, 95 S. Ct. 2160 (1975). Rule 26(b)(3) governs the application of attorney work-product, stating: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . . If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Not all materials prepared by a lawyer constitute work product. "[M]aterials prepared in the ordinary course of business or

---

[1] Approximately 2 questions were the subject of instructions not to answer based only "office policy": those related to Ms. Riel's resignation from the district attorney's office. (Motion Ex. 2, Riel Dep, at 84) Along with "office policy," defense counsel typically asserted "work product" in objection to the balance of the other questions. Those objections also are meritless and are addressed in section B.

pursuant to regulatory requirements or for other non-litigation purposes" do not constitute "documents prepared in anticipation of litigation" protected by work product privilege. *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992).

Further, under the North Carolina law that specifically governs the work of Mr. David's office, a prosecutor's work product shield has been narrowed to protect only written materials drafted by the prosecutor to use at trial and only information that contains "opinions, theories, strategies, or conclusions" of the prosecutor. N.C. Gen. Stat. § 15A-904(a). Similarly, once criminal charges are filed, North Carolina law requires the prosecutor to obtain and produce complete law enforcement records. N.C. Gen. Stat. § 15A-903(a)(1). Therefore, a North Carolina prosecutor knows that facts about and obtained during a criminal investigation are not shielded by work product after charges are filed.

        1.        <u>The Questions At Issue Seek Facts, Not Legal Theories</u>.

Plaintiffs seek information on facts that underlie the claims at issue, not the mental processes of attorneys about specifically-contemplated litigation. Mr. David, through counsel, instructed the witness not to answer over 50 deposition questions based on assertion of "work product" or "legal opinion." (Motion Ex. 1, Emery Dep., at 58-59, 62, 69-70, 72, 76-79, 87, 92-93, 97-98, 242, 253, 256, 258-59, 265, 267, 269, 270-71, 279, 299; Motion Ex. 2, Riel Dep., at 26-27, 28-30, 34-36, 39-51, 54-59, 61-62, 66-68, 78-79, 83, 85-86) In addition, defense counsel instructed witnesses not to answer without stating a ground at least 9 times (Motion Ex. 1, Emery Dep. at 61, 98-99, 115, 224, 260-61, 272-73; Motion Ex. 2, Riel Dep., at 62), which Plaintiffs address here on the assumption that the basis was "work-product."

Nearly all of the questions at issue sought facts that could support the claims alleged in the Complaint, including:

6

Case 7:16-cv-00016-RJ   Document 75   Filed 10/18/17   Page 6 of 19

4844-4201-0449, v. 2

- to what extent the District Attorney's Office participated in the planning and execution of the raids, which were conducted with unnecessary force and destruction (Cmplt. [ECF 1-1], 2/2/16, ¶¶ 110-17, 134; Motion Ex. 1, Emery Dep., at 224; Motion Ex. 2, Riel Dep., at 43-51, 54-62, 85-86);

- to what extent the District Attorney's Office targeted Plaintiffs in ways that are inconsistent with its typical practices, and to what extent Mr. David was aware of and directed this conduct (Cmplt. ¶¶ 112; Motion Ex. 1, Emery Dep., at 98-99, 253, 256, 258-60, 267, 270, 272, Motion Ex. 2, Riel Dep., at 34-36, 39-40, 41-45, 78-79);

- to what extent the District Attorney's Office's actions were motivated by failing to obtain criminal convictions in an earlier trial and other extraneous biases (Cmplt. ¶¶ 117-23; Motion Ex. 1, Emery Dep., at 87, 98-99; Motion Ex. 2, Riel Dep., at 83);

- to what extent the District Attorney's Office acted in disregard of the law in pursuing the eradication, even through improper tactics and intimidation, of business promotions like those operated by Plaintiffs (Cmplt. ¶¶ 136-39; Motion Ex. 1, Emery Dep., at 58-59, 61, 69-70, 72, 77-78, 89, 91, 92, 115, 242, 258-61, 270, 272-73, 299; Motion Ex. 2, Riel Dep., at 26, 28-30, 33, 66-68).

In addition, as is common in most civil cases, Plaintiffs sought testimony regarding witness statements about this case, including statements made about within the district attorney's office (Emery Dep. at 279).

      2.  <u>Work-Product Protection Does Not Apply</u>.

  Documents created in anticipation of litigation are considered attorney work product and only are discoverable if certain requirements are established. Fed. R. Civ. P. 26(b)(3)(A). Work product generally is divided between two categories—fact work product and opinion work product. *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997). Fact work product refers to purely factual information in *materials* prepared by an attorney that do not reveal or contain the

attorney's mental processes. *In re Grand Jury Proceedings #5,* 401 F.3d 247, 250 (4th Cir 2005); *see also Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1200 (D. S.C. 1974) ("as the work product of the attorney becomes less a matter of creative legal thought and more a mere recognition of observed fact, the work product becomes increasingly susceptible to discovery"). "Opinion work product" is "that which contains an attorney's 'mental impressions, conclusions, opinions or legal theories . . . concerning [specific] litigation.'" *In re Allen*, 106 F.3d at 607 (quoting *National Union*, 967 F.2d at 984) Notably, "mental impressions themselves do not qualify for protections under the work product doctrine. Such impressions must be related to specific litigation, actual or anticipated." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 423 (D. Md. 2005) (citing Fed. R. Civ. P. 26(b)(3); *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997)).

Here, with respect to "fact work product," there are no *materials* sought—just oral testimony. The facts at issue are not shielded just because they are within the knowledge of a lawyer. It is only when the lawyer creates materials in preparation or anticipation of specific litigation that the doctrine goes into effect. General oral descriptions and information about the District Attorney's ordinary office practices do not related to materials prepared for any specific litigation. (Motion Ex. 1, Emery Dep., at 92-93, 98-99, 115, 226, 242, 253, 256, 258-60, 261, 267, 269-71, 272-73; Motion Ex. 2, Riel Dep., at 33, 34-36, 39-40, 41-45, 54, 56-57, 78-79) Nor do questions regarding whether the District Attorney's Office participated in planning and executing the raids that destroyed Plaintiffs' property. (Motion Ex. 1, Emery Dep., at 224; Motion Ex. 2, Riel Dep., at 43-51, 54-62[2], 85-86) Likewise, the questions that would have

---

[2] In Ms. Riel's deposition, defense counsel instructed Ms. Riel not to answer whether she would have signed the crime scene log if it were not accurate, objecting "could be work product" and "could be the Fifth Amendment." (Riel Dep. at 58-59) Because Ms. Riel did

8

elicited mere "yes" or "no" responses, do not reveal the attorney mental processes related to specific litigation protected by the work product doctrine. (*E.g.,* Motion Ex. 2, Riel Dep. at 26-27, 28, 29, 33, 40, 43, 44, 45-46, 49-51, 54, 56, 56-57, 58, 61, 62, 66, 67, 78-79, 83, 84; Motion Ex. 1, Emery Dep. at 61, 62, 69-70, 77, 78, 91, 115, 253, 258-59, 265, 269-71, 279, 299.) In fact, some of the objected-to questions sought information about press conference planning, not litigation planning. (Motion Ex. 2, Riel Dep., at 66-68.) Further, to the extent that any questions sought information about general attitudes or opinions, the questions did not seek information about opinions prepared in anticipation of *specific* litigation, as required for the doctrine to apply. (*E.g.,* Motion Ex. 1, Emery Dep. at 58, 59, 76-77, 97-98; Motion Ex. 2, Riel Dep. at 26-30, 40) Accordingly, the assertion of work product as a ground to refuse to answer was without basis.

        3.      <u>Even if Protected, There is a Substantial Need for the Information and It Cannot Be Obtained Elsewhere</u>.

Even when information or documents fall within the work product doctrine, a court may compel disclosure when the party seeking discovery demonstrates a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Here, even if the work product doctrine applied, there is a compelling need for the information, and it should be disclosed. *Id.* 26(b)(3)(B).

To illustrate, in *In re McRay*, 2011 U.S. Dist. LEXIS 135258 (S.D.N.Y. Nov. 22, 2011) (unpublished) (copy attached), similar to this case, the plaintiffs sued law enforcement, the city, and the district attorney's office, alleging claims based on the investigation, arrest and conviction of certain of the plaintiffs. *Id.* *6. The plaintiffs claimed in part that their rights were violated

---

not invoke her Fifth Amendment privilege, this ambiguous objection is addressed as a work-product objection.

through "police officer and the prosecutors conspire[ing] together to prosecute Plaintiffs despite the initial lack of, and subsequent dissipation of, probable cause." *Id.* at * 17. The District Attorney objected to production of documents including their "to do lists," "thoughts about the discoverability and admissibility of certain evidence," and … "communications with expert witnesses," which the court concluded was in fact work product. *Id.* at *12-13.

The court then found that the plaintiffs "made the highly persuasive showing necessary to demonstrate their entitlement to core work product related to [the prosecutors'] assistance with the investigation of Plaintiffs." *Id.* at * 18. The court relied in part on the previous holding in the case that "where [prosecutors] themselves investigated or worked with police officers advising them on their investigative tactics, they are not entitled to absolute immunity." *Id.* at *19. The court therefore found that the prosecutors' "behavior during the investigation has been placed squarely at issue by [the p]laintiffs' claims, and documents generated in connection with the investigation are clearly relevant." The court further observed that the plaintiffs could not obtain the material from other sources, and that the disclosure would not reward sloth or interfere with ongoing litigation, and ordered that the documents "generated in connection with the investigation" be disclosed. *Id.* at *20. *In Re McKay* accords with other decisions that have allowed discovery of mental impressions of counsel when they have been placed directly at issue by claims asserted. *Leviton Mfg. Co.*, 613 F. Supp. 2d at 726 (collecting cases and concluding that defendant may "discover the mental impressions of [plaintiff's] patent counsel where they have been placed directly at issue due to [defendant]'s affirmative defense of inequitable conduct")

In this case, the conduct of the Office of the District Attorney in connection with raids that damaged Plaintiffs' property and other conduct directed toward Plaintiffs, which Plaintiffs

4844-4201-0449, v. 2

contend violated their rights, has been placed squarely at issue and the information about the investigation clearly is relevant. Moreover, there is no other source for the information: it can be obtained from those within the district attorney's office or not at all. Nor would disclosure of the information "reward sloth or interfere with ongoing litigation": the plaintiffs here seek historical facts about an investigation that has ended and culminated in criminal charges. Indeed, having now criminally charged Jeffrey Smith and Holly Smith, Defendants reasonably should expect that their investigation methods and results will be disclosed to the Smiths, as criminal defendants, pursuant to North Carolina criminal discovery statutes. Therefore, even if the Court concludes that any of the information sought by Plaintiffs in the depositions of Mr. Emery or Ms. Riel constitutes work product, it also should conclude that Plaintiffs have demonstrated a compelling need for the information and order that it be disclosed.

4. <u>Even if Work Product, the Crime/Fraud/Tort Exception to the Protection Applies</u>.

"The crime/fraud exception to the attorney-client and work product privileges provides that otherwise privileged communications or work product made for furtherance of a crime or fraud will not be privileged or protected." *Rambus, Inc. v Infineon Techs. AG,* 200 F.R.D. 264, 280 (E.D. Va. 2004); *see id.* at 281 (collecting cases and noting that the exception applies also to torts and other misconduct). For this exception to apply, there must be a *prima facie* showing that the party was engaged in misconduct, such as a criminal, tortious or fraudulent scheme; and that the information sought bears a close relationship to the scheme. *See id.* at 269 (party had made a prima facie showing by evidence tending to show a fraudulent scheme and that privileged information "bore a close relationship to frivolous scheme"); s*ee also Horizon of Hope Ministry v. Clark County*, (S.D. Oh. 1986) 115 F.R.D. 1, *12-13 (concluding that correspondence between prosecutor and zoning enforcement agency and witness statements in

11

prosecutor files were "not privileged because Plaintiffs' have made a *prima facie* showing that they were prepared in order to perpetuate a tort"). A *prima facie* showing does not require proof of the disputed fact, but merely requires "evidence that would 'subject the opposing party to the risk of nonpersuasion if the evidence as to the disputed fact was left unrebutted.'" *In re Grand Jury Proceedings*, 33 F.3d 342, 352 (4th Cir. 1992).

The exception applies in this case, because it is based upon tortious acts committed by Defendants against Plaintiffs. This case arises principally out of raids on Plaintiffs' businesses, in which Defendants intentionally and gratuitously destroyed Plaintiffs' property, and undertook gratuitous, publicity-seeking stunts (like using a helicopter and planning for and scheduling a press conference for immediately following the raid), to unconstitutionally intimidate, harass and injure Plaintiffs. (*See, e.g.,* Cmplt. ¶¶ 110-17, 123, 134) Plaintiffs have produced substantial *prima facie* evidence to support these allegations. The evidence shows that during the course of the raid that Defendants unnecessarily and intentionally cut wires to computers, LED lighting, TVs, and magnetic locks to cause damage to those items. (Exhibit B, Plaintiffs' Responses to Defendants' First Set of Interrogatories, Nos. 4, 6–9, 11-13; Cmplt. ¶¶ 30-67, 98-107). The damage from jerking wires for lighting off the Plaintiffs' premises also damaged the roof, allowing for water intrusion and damage into the building, and caused a fire in one of the buildings. (Ex. B, Response Nos. 7, 9). In addition, a large decorative mural was torn off a window and destroyed for no reason. (*Id.*, Response No. 3) Further, ATMs and safes were damaged when opened through the use of force, even though Plaintiffs would have been willing to open those items upon request. (Cmplt. ¶¶ 68-97) There was no justification for these actions other than to cause injury to Plaintiffs.

Case 7:16-cv-00016-RJ Document 75 Filed 10/18/17 Page 12 of 19
4844-4201-0449, v. 2

The evidence further shows that the District Attorney's office was an active participant in the meetings with Sheriff's office during the period leading up to the raids. (*See* Exhibit C, Dep. Ex. 37) During the raids, Mr. David was present. (Exhibit D, Declaration of Scott Long) In addition, three other members of his staff also were present, including Mr. Emery and Ms. Riel, as well as an investigator with the District Attorney's office. (Exhibit E, Dep. Ex. 5) The reasons for these persons' presence at the pre-raid meetings and at the raid, as well as their communications with law enforcement are critical to this case. It was unusual for there to be three members of the District Attorney's office, plus an investigator, during the execution of a search warrant. However, Mr. David's counsel would not allow a single question of either Mr. Emery or Ms. Riel regarding why they were at the meetings or the raids or their communications with law enforcement during those events. Plaintiffs explored these same questions with members from the Sheriff's office, but they claimed that they could not recall the substance of the conversations with the members of the District Attorneys' office during the meetings leading up to or during the raids. (Exhibit F, Jeffrey Tyler Dep. at 65, 145; Exhibit G, Morgan Johnson Dep. at 83, Exhibit H, Sheriff McVicker Dep. at 94, 133-34).

Plaintiffs further have cited to numerous examples of actions taken by the District Attorney's office, which demonstrate malice by the District Attorney and his office against Plaintiffs and its owners. (Compl. ¶¶ 127-143). This evidence of malice includes the District Attorney holding a prearranged press conference before the raid even was concluded, in which the District Attorney praised the actions of law enforcement and declared that that the activities at Plaintiffs' businesses were illegal and that the "last bet had been placed in Bladen County and the game is over." (Exhibit I, Dep. Ex. 60; Cmplt. ¶ 140) The District Attorney's office then requested as "sky-high" bond from the magistrate against Mr. and Mrs. Smith, but not for

Plaintiffs' employees who also were charged. While these actions clearly are material to the issue of malice, Mr. David's counsel shut down all lines of questions regarding these issues in Mr. Emery's and Ms. Riel's depositions.

In his objections to discovery and instructions not to answer, the District Attorney improperly and unfairly seeks to obstruct Plaintiffs' access to material evidence necessary to determine the full role of the District Attorney's office in the destruction of Plaintiffs' property during the raid, and the evidence material to demonstrate the District Attorney's malice. Therefore, if the Court concludes that Mr. David has demonstrated the applicability of any privilege, it also should conclude that the crime/fraud/tort exception applies, and it should order disclosure.

### 5. Mr. David Has Waived Any Applicable Protection.

"The proponent of the work product doctrine must show that he has not waived its protection." *Neuberger*, 230 F.R.D. at 418. In this case, Mr. David continues improperly to invoke work-product protection without regard for whether he has publicly disclosed or otherwise allowed testimony on the same subject. This conduct reveals not only a failure to acknowledge waiver in appropriate instances, but also Mr. David's vexatious approach to these issues.

For instance, in numerous instances, Mr. David has asserted that work product protections apply to statements that he has made public (*see* Emery Dep. at 76-79 & Riel Dep. at 26-30 (questions about publicly-disseminated memorandum from district attorney to law enforcement). Having published specific mental impressions about law enforcement efforts against any video sweepstakes operator, Mr. David cannot now be heard to claim that the same information should be shielded from discovery. Similarly, Mr. David maintains that whether any

14

4844-4201-0449, v. 2

prosecutor was at a crime scene search is confidential work product (Riel Dep. at 54), but the crime scene log listing the people who purportedly were at the crime scene was produced. (Ex. E) Also, counsel instructed Ms. Riel not to answer why she went into the Aladdin store during the raid (Riel Dep. at 54-55), but she testified about what she did while in the store (Riel Dep. at 55-57).

Therefore, although it is Mr. David's burden to demonstrate that any protection has not been waived, the record readily reveals many instances of waiver (if the protection ever applied).

### C. The District Attorney's Instructions Not to Answer Based on Attorney-Client Privilege Were Unfounded.

Defense counsel instructed the witnesses not to answer based on attorney-client privilege or "possible attorney-client privilege" at least five times. (Motion Ex. 1, Emery Dep, at 62 ("could even be attorney client"), 79 ("it might also be attorney client"), 265 ("starts to meander into attorney-client"), 279 (whether or not witness has spoken to Mr. Adinolfi and whether there have been discussions among prosecutors about this civil lawsuit); Motion Ex. 2, Riel Dep., at 57) Since then, defense counsel has done nothing to substantiate that the privilege applies.

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and the privilege has been (a) claimed and (b) not waived." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 338-39 n.3 (4th Cir. 2005) (citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)).

15

4844-4201-0449, v. 2

In this case, it is not even evident that the most basic of the multiple elements of the privilege--an attorney-client relationship--existed. To illustrate, there is no evidence Mr. Emery was an attorney for Mr. David, yet counsel objected to disclosure of communications between the two of them. (Motion Ex. 1, Emery Dep. at 62) Further, the mere question of whether Mr. Emery spoke with Mr. Adinolfi does not involve a privileged communication, but counsel objected. (Ex. Emery Dep, at 279) Similarly, counsel instructed Ms. Riel not to answer if she thought about certain topics before her deposition on grounds of attorney-client privilege, even though she stated that she had not consulted with counsel before the deposition. (Motion Ex. 2, Riel Dep. at 8, 57) Therefore, many instructions not to answer based on attorney-client privilege appear to have been lodged without basis, and were not properly withdrawn before this motion was filed.

### D. The District Attorney's Instructions Not To Answer Based on "Law Enforcement Privilege" Are Without Merit.

At least two deposition questions were the subject of instructions not to answer based on "law enforcement privilege." (Motion Ex. 1, Emery Dep., at 62; Motion Ex. 2, Riel Dep., at 33) The state statutory privilege to which defense counsel referred in asserting the "law enforcement privilege," N.C. Gen. Stat § 132-1.4, shields active investigations from public records requests before charges have been filed. Here, charges have been filed. Pursuant to Chapter 15A of the North Carolina General Statutes, law enforcement's actions and information with regard to an investigation after charges have been filed are the subject of disclosure *obligations,* not protections.[3]

---

[3] Of course, Plaintiffs are not seeking this information as a general member of the public through a public records request. Plaintiffs are seeking this information through a lawsuit against the Defendants, where this information is directly relevant and material to the claims pending against Defendants.

4844-4201-0449, v. 2

Similarly, under federal law, the burden is on the proponent to demonstrate that the narrow common law investigatory privilege applies. "The Fourth Circuit has not directly addressed the law enforcement privilege," but district courts from other circuits have addressed the burden that the proponent must meet to invoke it. *United States v. Matish*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016). The proponent must proffer information sufficient to demonstrate that "the information is [the type] that the law enforcement privilege is intended to protect" and that the public interest in the confidentiality of governmental information outweighs the need of a litigant to obtain the data. *See id.*; *see also Fountain v. City of New York*, 2004 U.S. Dist. LEXIS 7539, at *9 (S.D.N.Y. May 3, 2004) (when claiming law enforcement privilege, "police must make a *substantial showing* that there are specific harms likely to accrue from disclosure of specific materials") (emphasis added) (copy attached). Mr. David's conclusory assertions of "law enforcement privilege" do nothing to demonstrate that he has met his burden, and the record likewise does not disclose any basis for its application. The Court therefore should strike the objections and order disclosure.

## CONCLUSION

Defendant David's instructions not to answer in Mr. Emery's and Ms. Riel's depositions were without basis and the Court should compel disclosure by order the further deposition of the witnesses at the expense of Defendant David. Further, Defendant David's opposition to this motion also is without substantial basis and the Court should order Defendant David to pay the reasonable costs and expenses incurred in the pursuit of this motion.

*[Signature Page Follows]*

Respectfully submitted, this the 18th day of October, 2017.

        MORNINGSTAR LAW GROUP

        /s/ William J. Brian, Jr.
        William J. Brian, Jr.
        N.C. State. Bar. 16570
        bbrian@morningstarlawgroup.com

        /s/ Keith P. Anthony
        Keith P. Anthony
        N.C. State Bar No. 28405
        kanthony@morningstarlawgroup.com
        112 W. Main Street, Second Floor
        Durham, NC  27701
        Telephone: (919) 590-0385
        Facsimile:  (919) 882-8890

        *Attorneys for Cybernet LLC and Aladdin Real Estate LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed with the Clerk of Court for the Eastern District of North Carolina using the CM/ECF system, which will send notification of such filing to the following:

>David J. Aldinofi II
>Special Deputy Attorney General
>North Carolina Attorney General's Office
>114 W. Edenton Street
>Post Office Box 629
>Raleigh, NC 27602-0629
>daldinofi@ncdoj.com
>
>Christopher J. Geis
>Patrick G. Spaugh
>Womble Carlyle Sandridge & Rice, LLP
>One West Fourth Street
>Winston-Salem, NC 27101
>cgeis@wcsr.com
>pspaugh@wcsr.com

This the 18th day of October, 2017.

>MORNINGSTAR LAW GROUP
>
>/s/ Keith P. Anthony
>Keith P. Anthony
>N.C. State Bar No. 28405
>kanthony@morningstarlawgroup.com
>Morningstar Law Group
>112 W. Main Street, Second Floor
>Durham, NC 27701
>
>*Attorneys for Cybernet, LLC and Aladdin Real Estate, LLC*