IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:16-CV-16-RJ

| | |
|---|---|
| CYBERNET, LLC and<br>ALADDIN REAL ESTATE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JONATHAN DAVID, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)    **O R D E R**<br>)<br>)<br>)<br>)<br>) |

This matter is before the court on two discovery-related motions: (1) Defendants James McVicker and Travis Deaver's motion to compel [DE-70], to which Plaintiffs filed a response in opposition [DE-78]; and (2) Plaintiffs' motion to compel [DE-74], to which Defendant Jonathan David filed a response in opposition [DE-81]. The issues have been fully briefed, and the motions are ripe for decision. For the reasons that follow, Defendants James McVicker and Travis Deaver's motion to compel [DE-70] is allowed, and Plaintiffs' motion to compel [DE-74] is denied.

## I. BACKGROUND

Cybernet, LLC ("Cybernet") and Aladdin Real Estate, LLC ("Aladdin") (collectively, "Plaintiffs") filed this case against Jonathan David, the District Attorney for the 13th Prosecutorial District of North Carolina ("David" or the "District Attorney"), James McVicker, the Sheriff of Bladen County ("McVicker" or the "Sheriff"), and Travis Deaver ("Deaver"), a Deputy Sheriff of Bladen County (McVicker and Deaver are collectively referred to as the "Sheriff Defendants"), asserting claims for conversion, declaratory judgment, takings under the

United States and North Carolina Constitutions, and deprivation of federal constitutional rights under 42 U.S.C. § 1983, all stemming from the alleged destruction of Plaintiffs' property during the execution of search warrants by the Bladen County Sheriff's Office. [DE-1-1].

On October 12, 2017, the Sheriff Defendants filed the instant motion to compel deposition testimony from Jeffrey Smith ("Smith"), who is the owner of Aladdin, Compl. [DE-1-1] ¶ 14, Smith Dep. [DE-71-1] at 33:15–19. [DE-70]. On October 18, 2017, Plaintiffs filed the instant motion to compel deposition testimony from Irene Riel ("Riel") and Glenn Emery ("Emery"), who both worked as assistant district attorneys under David at the time of the events at issue in this case, Pls.' Mot. [DE-74] ¶¶ 4–5. [DE-74]. Smith, Riel, and Emery each declined to answer certain questions based on a variety of objections interposed by counsel, which movants challenge in their respective motions. [DE-70, -74]. All case deadlines were stayed pending resolution of these issues. [DE-72].

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure enable parties to obtain information by deposition. Fed. R. Civ. P. 30. Both the appropriateness of the objections and the relevance of the questions are at issue in the motions.

> An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer . . . if a deponent fails to answer a question asked under Rule 30 or 31[.]" Fed. R. Civ. P. 37(a)(3)(B)(i). However, the Federal Rules also provide that

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Additionally, "the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Finally, the party seeking the court's protection from responding to discovery must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402–03 (4th Cir. 2003).

### III. DISCUSSION

**A.    The Sheriff Defendants' Motion to Compel [DE-70]**

The Sheriff Defendants seek an order compelling Smith to answer questions regarding

(1) the operations and promotions conducted at the two Cybernet, LLC stores, (2) the purported explanation of how Cybernet, LLC's promotions operated and complied with the law that Mr. Smith presented to Sheriff McVicker for over an hour, (3) how different training could have helped the Sheriff Defendants better evaluate the legality of Cybernet, LLC's operations and promotions, and (4) what Mr. Smith's offered demonstration and/or explanation of the operations and promotions would have entailed if the Sheriff had accepted this offer.

Defs.' Mot. [DE-70] ¶ 2. The Sheriff Defendants contend that the instructions to Smith, from Plaintiffs' counsel and Smith's criminal counsel, not to answer questions on these topics were improper because they do not preserve a privilege or protect a court-ordered limitation, the discovery sought is relevant, and Smith's pending criminal charges cannot prevent discovery in this action. *Id.* ¶ 3; Defs.' Mem. [DE-71] at 6–9. The Sheriff Defendants ask the court to reopen discovery for the limited purpose of completing Smith's deposition (in up to two hours of additional questioning), to extend the dispositive motions deadline to 14 days after the completion of Smith's deposition, and to require Plaintiffs' counsel and Smith's criminal counsel to pay the Sheriff Defendants' reasonable expenses and attorney's fees incurred in bringing the motion and continuing the deposition. Defs.' Mot. [DE-70] ¶¶ 6–7. In response, Plaintiffs contend that the disputed questions are outside the scope of Phase I discovery and seek privileged information, specifically information protected by N.C. Gen. Stat. § 15A-906 and the work product doctrine. Pls.' Resp. [DE-78] at 4–10.

Plaintiffs first contend that the Sheriff Defendants' questions exceed the scope of Phase I discovery and, thus, are irrelevant at this stage of the litigation. Pls.' Resp. [DE-78] at 4–8. The court adopted the parties' discovery plan and ordered bifurcated discovery with (i) an initial discovery phase focused on Defendants' liability and immunity defenses ("Phase I discovery"); and (ii) a second phase focused on all remaining issues should immunity not be case dispositive ("Phase II discovery"). [DE-58]. The parties' discovery plan specifically provided as follows:

> During the initial phase of discovery, discovery will be limited to matters which relate to the Defendants' liability and their claims of absolute immunity, qualified immunity and public official immunity, including any potential defenses to the application of those immunities. Accordingly, without limiting the scope of the prior sentence, discovery is appropriate into whether the Defendants acted in a way that a reasonable official would know would violate a constitutional right, whether the Defendants engaged in malicious, corrupt or ultra vires acts, and whether Defendant David acted in any manner that was outside the prosecutorial function or in violation of clearly established law. Nothing herein shall constitute a temporal restriction limiting discovery on these subject matters to events that took place during the execution of the search warrants at issue in this case.

[DE-57] ¶ 2.a. The parties are in agreement that Phase I discovery encompasses the issue of whether Defendants acted with malice. Pls.' Resp. [DE-78] at 5; *see Knight Estate of Graham v. City of Fayetteville*, 234 F. Supp. 3d 669, 692 (E.D.N.C. 2017) (concluding a plaintiff's state tort claims against defendants individual officers in their individual capacities were barred by public official immunity where there was no evidence the officers acted with malice or corruption). However, Plaintiffs contend that questions regarding the legality of Cybernet's promotions are not relevant to the issues of Defendants' liability or malice. Pls.' Resp. [DE-78] at 5–8. The court disagrees.

> Plaintiffs allege in the complaint that the
>
> Sheriff's malicious intent is evidenced by the fact that on several occasions prior to the Raids, Plaintiffs had invited both the Sheriff and the District Attorney to visit both Store 1 and Store 2 and to view everything in both buildings and to review the manner in which Cybernet conducted its business. Therefore, no "raid" of any kind was necessary for the District Attorney and the Sheriff to carry out the lawful duties of their respective offices, and the Raids were gratuitous exercises of excessive force.

Compl. [DE -1-1] ¶ 110. Additionally, Plaintiffs' response, without objection, to written discovery regarding the above allegation in the Complaint stated that "Smith spent over an hour explaining [to Sheriff McVicker] how those promotions *operated and complied with the law*, and also that he felt that law enforcement was poorly trained in applying the laws applicable to those promotions." Defs.' Mem., Ex. 4 [DE-71-4] at 2 (emphasis added); *see also* Smith Dep. [DE-71-

1] at 104:5–25 (Smith testified that he "offered the sheriff to come and review the operation at any time and [he'd] be happy to go over it with him" and that the sheriff's refusal to do so prior to executing the search warrant was part of his malice claim). In Plaintiffs' response to the instant motion, they provide yet another example of the purported malice that is likewise related to Smith's perception of how the promotions function, to wit: "that Sheriff Defendants obtained search warrants through false pretenses by submitting affidavits that contained false statements and *omitted material facts how the promotions being offered by the two stores worked.*" Pls.' Resp. [DE-78] at 2 (emphasis added). Therefore, Smith's understanding of how the operations and promotions were conducted at the Aladdin stores, Smith's explanation of how the promotions operated and complied with the law that Smith presented to McVicker, how Smith believed different training could have helped the Sheriff Defendants better evaluate the legality of the operations and promotions, and what Smith's offered demonstration and/or explanation of the operations and promotions would have entailed if McVicker had accepted this offer are all relevant to the issue of alleged malice on the part of the Sheriff Defendants and are squarely within the scope of Phase I discovery. Accordingly, Plaintiffs' relevance objection as to this line of questioning is overruled.

Plaintiffs next contend that the information sought is privileged pursuant to N.C. Gen. Stat. § 15A-906 and the work-product doctrine. Pls.' Resp. [DE-78] at 8–10. Plaintiffs believe that the Sheriff Defendants are attempting to obtain information to be utilized in a pending criminal prosecution of Smith, which the District Attorney was leading until his office was disqualified from the case, and in which the Sheriff Defendants may be witnesses. *Id.* at 9.

6

N.C. Gen. Stat. § 15A-906, Disclosure of evidence by the defendant - Certain evidence not subject to disclosure, provides as follows:

> Except as provided in G.S. 15A-905(b) this Article does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant or his attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by prosecution or defense witnesses, or by prospective prosecution witnesses or defense witnesses, to the defendant, his agents, or attorneys.

This is a state law of criminal procedure, which "applies to cases within the original jurisdiction of the superior court." N.C. Gen. Stat. § 15A-901. Plaintiffs cite no authority for applying it in a civil case, and the court has independently found none. Therefore, the court declines to apply N.C. Gen. Stat. § 15A-906 in this case.

The work-product privilege generally protects "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case," *United States v. Nobles*, 422 U.S. 225, 238 (1975), and has been incorporated, in part, into the Federal Rules of Civil Procedure:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>     (i) they are otherwise discoverable under Rule 26(b)(1); and
>     (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).[1] While the work-product provision in the Federal Rules applies to "documents and tangible things," *id.*, the common law work-product privilege also covers

---

[1] "In matters involving the attorney work product protection, federal courts are to apply federal law, as opposed to state law . . . ." *Spilker v. Medtronic, Inc.*, No. 4:13-CV-76-H, 2014 WL 4760292, at *4 (E.D.N.C. Sept. 24, 2014) (citation omitted).

"counsel's mental impressions, conclusions or opinions [] sought in the context of a deposition, rather than as memorialized on paper[.]" *Maynard v. Whirlpool Corp.*, 160 F.R.D. 85, 87 (S.D.W. Va. 1995) (citing *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). "In claiming the work-product privilege, the party must demonstrate that the documents in question were created 'in preparation for litigation.'" *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011) (quoting *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994)). The proponent of work-product protection has the burden of establishing its applicability. *Sandberg v. Va. Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992).

Plaintiff argues that information related to the legality of the promotions was procured in anticipation of litigation. Pls.' Mem. [DE-78] at 9. In support of this argument, Plaintiffs explain that "[t]he entire reason that Mr. Smith discussed the promotions with the Sheriff during the campaign is that he anticipated that law enforcement might take action against Cybernet, which he was trying to avoid." *Id.* (citing Smith Dep. [DE-71-1] at 107–08). However, the work-product immunity may be "waived if the client, the client's lawyer, or another authorized agent of the client: . . . (4) discloses the material to third persons in circumstances in which there is a significant likelihood that an adversary or potential adversary in anticipated litigation will obtain it." *Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 772 (D. Md. 2008) (quoting Restatement (Third) of the Law Governing Lawyers § 91 (2000)). Thus, even assuming that the information sought from Smith was at one time protected work product, Smith's disclosure of the information to McVicker, whom Smith believed to be a potential adversary in anticipated litigation, and Smith's offer to further discuss the information with McVicker in an effort to avoid a potential raid on his businesses, demonstrates that Smith had no expectation of maintaining, and has in fact waived through disclosure, any privilege related to his understanding

of the operation and legality of the promotions. *See* Defs.' Mem., Ex. 4 [DE-71-4] at 2 ("Smith spent over an hour explaining [to Sheriff McVicker] how those promotions *operated and complied with the law*, and also that he felt that law enforcement was poorly trained in applying the laws applicable to those promotions.") (emphasis added); Smith Dep. [DE-71-1] at 104:5–20 (Smith testified that he "offered the sheriff to come and review the operation at any time and [he'd] be happy to go over it with him"); *Doe v. United States*, 662 F.2d 1073, 1081 (4th Cir. 1981) (holding that voluntary disclosure of "otherwise protected work product to someone with interests adverse to . . . those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, [] may be deemed to have waived work product protection.") (citing cases). Accordingly, the information sought is not protected attorney work product.

Having determined that the information sought is relevant and within the scope of Phase I discovery, and not protected by any asserted privilege, the court finds good cause to reopen discovery for the limited purpose of completing Smith's deposition (in up to two hours of additional questioning) by no later than **February 23, 2018**, and to extend the dispositive motions deadline to **March 9, 2018**.

Sheriff Defendants also ask the court to require Plaintiffs' counsel and Smith's criminal counsel to pay the Sheriff Defendants' reasonable expenses and attorney's fees incurred in bringing the motion and continuing the deposition. The court finds that the circumstances presented, i.e., the pendency of the criminal prosecution, justify the cautious approach of Smith's counsel, notwithstanding the court's ultimate decision overruling the objections, would make an award of expenses unjust. *See* Fed. R. Civ. P. 37(d)(3). Accordingly, the court in its discretion declines to award expenses and attorney's fees incurred in bringing the motion and continuing the deposition.

B.   **Plaintiffs' Motion to Compel [DE-74]**

Plaintiffs seek an order to compel Glenn Emery and Irene Riel to reappear for deposition and answer questions these deponents previously refused to answer on a variety of grounds, including attorney-client privilege, work-product privilege, and law enforcement privilege, which Plaintiffs contend are improper objections. Pls.' Mem. [DE-75] at 2–17. Plaintiffs argue that the questions seek information relevant to the issue of malice and Defendants' assertion of immunity, specific factual allegations of the complaint, and the intent of Defendants. Pls.' Mot. [DE-74] ¶ 9. Plaintiffs also seek costs and attorney's fees associated with reopening the depositions and bringing the instant motion. *Id.* ¶ 10. In response, the District Attorney contends that the objections asserted at the deposition were proper and that certain information sought is not relevant. Def.'s Resp. [DE-81] at 6–19.

Having reviewed the complete deposition transcripts, in light of the allegations in the complaint and the defenses asserted, the court finds that the disputed questions are outside the scope of discovery permitted by Rule 26(b)(1), because they are either (1) irrelevant or not proportional to the needs of the case, or (2) are unreasonably cumulative or duplicative, and, therefore, must be precluded pursuant to Rule 26(b)(2)(C)(i) and (iii).

The court has previously recognized that Plaintiffs' claims are directed to the destruction of Plaintiffs' property during the execution of search warrants and do not challenge the validity of those search warrants but rather the manner in which the search warrants were executed. *See Cybernet, LLC v. David*, No. 7:16-CV-16-RJ, 2016 WL 5106986, at *5 (E.D.N.C. Sept. 19, 2016) (citing Compl. [DE-1-1] ¶¶ 144–65). Likewise, Plaintiffs have not asserted separate claims based on the District Attorney and Sheriff holding a press conference or for malicious prosecution, and Plaintiffs' claims do not turn on the legality of sweepstakes games. *Id.* at *8–9.

Nevertheless, Plaintiffs' depositions of Emery and Riel sought to explore at great length these very issues, e.g., the legality of sweepstakes games, the legality of the search warrants, the press conference, and the criminal prosecution of the Smiths. Plaintiffs' allegation of malice on the part of the District Attorney because he prosecuted the Smiths, requested high bond for the Smiths, and later brought additional charges against the Smiths, is not a license to delve into the inner workings of the District Attorney's Office or the prosecutorial decisions associated with the Smith's criminal cases. As evidenced by the below summary of pertinent testimony, Emery and Riel more than sufficiently responded to questions regarding these tangential issues.

Emery testified at his deposition, in relevant part, as follows: he was the prosecutor assigned to Smith's initial criminal case in 2013 and to Smith's 2016 criminal case until the District Attorney's Office was recused, Emery Dep. [DE-85-1] at 41:21–44:3; he was not prepared to define "sweepstakes" because he thought it called for a very long legal opinion, he did not have reference to the statutes, among other things, and it would require applying the statutes to a specific set of facts, *id.* at 58:4–59:3; he received some training on sweepstakes law as part of a training at the Conference of District Attorneys a few years prior, but he did not recall whether he received training materials and, if so, whether he kept them, *id.* at 59:13–24, 60:23–7; he was not consulted by the Sheriff on either of Smith's criminal cases that he prosecuted, *id.* at 90:7–17; he did not assist in the Sheriff's investigation of the Aladdin stores, but may have had some advisory role with reference to which statutes to investigate, although he did not specifically recall being consulted or giving such advice, *id.* at 116:10–24; he believed the Sheriff relied on Ronnie Mitchell, an attorney in Cumberland County, for legal advice, *id.* at 118:3–17; the District Attorney played no role in the investigation, other than attending one meeting, and he was not aware of anyone else in the District Attorney's Office who was involved

in the investigation, *id.* at 122:9–13; he did not recall being present at any meetings on the day the search warrants were executed, *id.* at 144:8–16, 152:17–153:1; he was present as an observer, for less than an hour, at the Aladdin stores while the search was being conducted, but did not speak to anyone regarding anything substantive, and did not advise anyone regarding what should be seized or direct anyone to cause damage during the search, *id.* at 146:1–17, 154:18–155:9, 164:2–6, 179:8–20, 192:2–4, 193:3–7; during the execution of the search warrants he observed documents being collected, photographs being taken, electrical equipment being seized, and he did not see anyone cutting cables, removing LED lights, drilling open a safe, opening an ATM, or being on the roof, *id.* at 177:4–178:20, 218:1–14; the District Attorney and Sheriff were not at the Aladdin stores while he was there during the execution of the search warrants, *id.* at 236:15–18; he had nothing to do with the preparation of the search warrants, did not review the search warrants or affidavit in support before they were served, and it was not his practice to assist in drafting search warrants, *id.* 157:5–12, 170:1–5, 198:15–25; he did not know why certain information was left out of the affidavit in support of the search warrants and did not provide advice to the Sheriff's Office in that regard on the Aladdin warrants or any other warrants, *id.* at 204:16–205:15, 211:7–16, 216:9–16; typically, he would not review a search warrant from a case he was prosecuting until the case was going to trial, unless a potential problem was brought to his attention, *id.* at 169:14–25; he would not have contacted the Smiths for assistance with executing the search warrants because it was a pending case and they were represented by counsel, and he was unaware whether the Sheriff would have done so because he did not know the Sheriff's practice in executing search warrants, *id.* at 178:12–179:7; he did not accept Smith's offer to visit the stores and learn about the operations because he "was not interested in being a witness in [his] own case," and he did not have the District Attorney's

12

investigator do so because his office does not give advisory opinions to the public, *id.* at 224:21–225:25; he was not involved with the press conference held by the District Attorney and Sheriff on the day the search warrants were executed, he did not know whether the District Attorney's remarks were prepared ahead of time and, if so, who prepared them, and there was not a person in the District Attorney's Office who was in charge of writing press releases, *id.* at 230:4–9, 233:5–234:2; he believed he would have given advice on what charges to bring against whom based on what was told to him by law enforcement, but had not examined the seized evidence at the time the Smiths were charged and was not involved in the Smith's arrest, *id.* at 244:5–22; he played no role when the Smiths were taken before the magistrate, was not aware that anyone else in the District Attorney's Office, including Irene Riel, was involved, and he had never tried to influence a magistrate with respect to the size of a bond, explaining that the law enforcement officer presents the charges and brings the defendant to the magistrate, *id.* at 246:6–21, 254:14–23, 270:1–6; he made the indictment decisions with respect to the Smiths and drafted additional indictments against them, which were presented to the grand jury at the same time as the original charges, but he did not present them personally to the grand jury because that is done solely by the law enforcement officer, *id.* at 256:15–18, 257:7–258:12; and he did not believe factually inconsistent charges were brought against the Smiths, and stated it was standard practice to examine the relevant statutes before bringing a charge, *id.* at 268:22–15.

Riel testified at her deposition, in relevant part, as follows: she was previously an assistant district attorney in Bladen County along with Glenn Emery, *id.* at 17:1–21; she never prosecuted cases involving sweepstakes or the like, never received training from the District Attorney's Office regarding those types of cases, and was not involved in the investigation of the Aladdin stores or any cases against the Smiths, *id.* at 22:7–17, 24:9:–21, 25:6–9; she knows

13

nothing about the legality of electronic sweepstakes or video games and has never even read the statute, *id.* at 26:11–13; she attended a meeting on March 17, 2015, which included members of the Bladen and Cumberland County Sheriff's Departments, the District Attorney and members of his staff, and Ronnie Mitchell, related to the operations of the Aladdin stores, but she did not recall any specifics that were discussed, did not recall any discussions specifically about the Aladdin stores, did not contribute substantively during the meeting, and believed the members of her office were doing more listening and Cumberland County was doing more talking about how they handled sweepstakes-type cases, *id.* at 31:12–32:7, 33:1–34:12; other than sitting in on a meeting, she had no involvement in any of the process or decision-making related to the Aladdin case, *id.* at 39:1–9; she had never seen the Aladdin search warrants or affidavit in support, *id.* at 43:23–44:3; she was present during a portion of the search of the Aladdin stores, was there on her own initiative and not at the request of the Sheriff, and was not looking for anything in particular, *id.* at 46:24–48:14; the Aladdin stores were empty and they were "packing up" by the time she arrived, she walked through and briefly spoke with law enforcement officers but did not recall what they spoke about, and she did not recall seeing any member of law enforcement causing damage at the stores, *id.* 54:22–56:14, 60:1–21, 61:19–20, 62:2–6; she did not recall seeing the District Attorney at the Aladdin stores, *id.* 57:13–16; she did not attend any pre-execution or staging meetings at the District Attorney's Office or with the Sheriff's Office, *id.* at 59:15–22; she learned of the press conference just before it happened and was in attendance, but had no role in preparing the District Attorney's remarks, and did not find the timing of the press conference unusual, *id.* at 64:14–65:2, 66:24–67:4, 68:7–69:8; she had no role in connection with the arrest warrants issued for the Smiths and no involvement in determining how to charge the Smiths, *id.* at 70:16–25; she did not recall having any role in connection with the Smith's bond

14

hearing and did not recall requesting a bond amount, explaining that normally bond is set when a warrant is issued and the suspect is brought before the magistrate, and that she was generally never part of that process and specifically was not involved in the Smiths' case, *id.* at 71:12–73:25, 77:8–78:1, 79:25–80:11.

Emery and Riel testified extensively regarding their knowledge of, and the extent of any involvement in, the execution of the search warrants at issue in this case. They also provided sufficient testimony regarding what they knew about the Sheriff's Office investigation of the Aladdin stores, the preparation of the search warrants, the press conference, and the Smiths' criminal cases, including the bond issue. The deposition testimony recounted above belies Plaintiffs' contention that counsel "would not allow a single question of either Mr. Emery or Ms. Riel regarding why they were at the meetings or raids or their communications with law enforcement during those events" and "shut down all lines of questions" regarding the press conference and the Smiths' bond. Pls.' Mem. [DE-75] at 13–14. The questions they refused to answer, [DE-74] at 4–8, fall outside the scope of discovery because they are either not relevant to the claims and defenses at issue in this case, are not proportional to the needs of the case, or they were sufficiently addressed in response to other questions and, thus, are cumulative or duplicative. Pursuant to Rule 26(b)(2)(C)(i) and (iii), the court "on motion *or on its own*, . . . *must*" limit the extent of such discovery. Accordingly, the court need not reach the privilege issues, and the motion to compel is denied.

## IV. CONCLUSION

For the reasons stated above, Defendants James McVicker and Travis Deaver's motion to compel [DE-70] is allowed, and Plaintiffs' motion to compel [DE-74] is denied.

SO ORDERED, the 9th of February 2018.

                                      Robert B. Jones, Jr.
                                      United States Magistrate Judge