IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:16-cv-00016-RJ

| | |
|---|---|
| CYBERNET, LLC; and ALADDIN REAL ESTATE, LLC, </br></br> Plaintiffs, </br></br> v. </br></br> JONATHAN DAVID, in his personal capacity and his official capacity as District Attorney for the 13th Prosecutorial District of North Carolina; JAMES McVICKER, in his personal capacity and his official capacity as Sheriff of Bladen County, North Carolina; and TRAVIS DEAVER, in his personal capacity and his official capacity as a Deputy Sheriff of Bladen County, North Carolina, </br></br> Defendants. | **REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS JAMES McVICKER AND TRAVIS DEAVER** |

## ARGUMENT

Sheriff McVicker and Deputy Deaver are entitled to summary judgment on all of Plaintiffs' claims because there is no evidence upon which a reasonable juror could find them liable. "[O]nly 'reasonable' inferences from the evidence need be considered by the court" and "it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995). "Whether an inference is reasonable cannot be decided in a vacuum; it must be considered 'in light of the competing inferences' to the contrary." Id. (citation omitted). There is no "genuine" dispute "if the evidence is merely colorable or not significantly probative." Id. (citation omitted). Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Plaintiffs essentially contend that everyone—from Assistant District Attorneys, to a law enforcement officer from another county, to five Bladen County Sheriff's Officers—is lying about Sheriff McVicker's motivations for initiating an investigation into Plaintiffs' operations and his lack of

1

involvement in the resulting investigation and execution of the search warrants. Other than Mr. Smith's self-serving statements, "Plaintiff[s] present[] nothing to support [their] wild accusations of perjury and a far ranging conspiracy to obstruct justice. [Plaintiffs'] speculation and conjecture are not sufficient to defeat summary judgment. No rational jury could credit plaintiff's farfetched conspiracy theory in the face of the overwhelming evidence showing that" Sheriff McVicker had no intent to—and did not—harm Plaintiffs. Shepherd v. Coastal Cmty. Action, Inc., 602 F. Supp. 2d 686, 692 (E.D.N.C. 2009) (quoting Pittman v. Hunt Const. Grp., 564 F. Supp. 2d 531, 536 (E.D.N.C. 2008), aff'd, 308 F. App'x 672 (4th Cir. 2009)); see also Harris v. Home Sales Co., 499 F. App'x 285, 294 (4th Cir. 2012) (noting courts "should . . . not find a genuine dispute of material fact based solely on [the plaintiff's] self-serving testimony"); Larken v. Perkins, 22 F. App'x 114, 115 (4th Cir. 2001) (holding that "self-serving affidavit containing conclusory assertions and unsubstantiated speculation" was "insufficient to stave off summary judgment"); Nat'l Enterprises, Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000) (same); Riley v. Honeywell Tech. Sols., Inc., 323 F. App'x 276, 278 n.2 (4th Cir. 2009) (same). Sheriff McVicker and Deputy Deaver provided Plaintiffs with every photograph taken by Lieutenant Johnson during the execution of the search warrants (more than 300 pictures) and yet the *only* photograph Plaintiffs present to the Court demonstrates no damage. (DE-98, ¶31.) The lack of pictures speaks a thousand words.

I. **Sheriff McVicker And Deputy Deaver Are Not Liable Under 42 U.S.C. § 1983 Because They Acted Reasonably And Did Not Violate Plaintiffs' Constitutional Rights.**

A. **Sheriff McVicker Did Not Violate Any Of Plaintiffs' Constitutional Rights.**

Plaintiffs concede that there is no evidence that Sheriff McVicker removed or destroyed any property during the approximately one hour in which he was present for the execution of the search warrants. (DE-97, pp.14-17.) Instead, relying on Static Control Components, Inc. v. Darkprint Imaging, Inc., they claim the Court should rely on circumstantial evidence to find that Sheriff McVicker personally damaged this property merely because he "had an opportunity to cause the damage." 200 F. Supp. 2d 541, 545 (M.D.N.C. 2002) ("A party cannot withstand summary judgment if it offers only mere speculation of misappropriation instead of evidence supported by facts."); (DE-97, p.16.) This is not enough. "The

2

plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." Colbert v. City of Chicago, 851 F.3d 649, 657 (7th Cir. 2017), cert. denied sub nom. Colbert v. City of Chicago, Ill., 138 S. Ct. 657, 199 L. Ed. 2d 532 (2018)

Plaintiffs claim that Sheriff McVicker "had a motive" and "acted with malice toward Plaintiffs" as a result of pressure from Jon David and to keep "his campaign abuses under wraps." (DE-97, p.17.) These assertions are both devoid of factual support and illogical on their face. Regardless, mere "opportunity and motive" is not sufficient evidence at the summary judgment stage. Other than Static Control, the only case Plaintiffs cite on this issue is Rodriguez v. Gerardot, No. 1:12-CV-151-PPS, 2014 WL 1794560, at *4 (N.D. Ind. May 5, 2014). Rodriguez, a non-binding case, is distinguishable because it was undisputed that the defendant-officer "alone searched the car, and there [was] no evidence that anyone else had access to it." Id. That is not the case here, where twenty law enforcement officers were present at various times during the searches. (DE-97-12.)

Molina ex rel. Molina v. Cooper is instructive. 325 F.3d 963, 973–74 (7th Cir. 2003). In Molina, Plaintiffs argued that an officer's admission that he accessed the damaged property during a search was sufficient circumstantial evidence to raise a factual dispute as to whether he damaged the property. Id. at 973. The Seventh Circuit disagreed, holding that evidence of the officer's mere presence or opportunity to damage the property was "simply too thin to survive summary judgment" because he was "one of *seventeen* officers who could conceivably have damaged the truck." Id. (emphasis original). More recently, the Seventh Circuit reiterated this position in granting summary judgment where a plaintiff sued "four of ten searching officers, alleging that they had caused property damage," but "was unable to identify which of the ten searching officers had caused the alleged property damage because he was not allowed in the rooms while the officers conducted their search." Colbert, 851 F.3d at 657; see also Gordon v. Louisville/Jefferson Cnty. Metro Gov't, 486 F. App'x 534, 541 (6th Cir. 2012) (affirming summary judgment in favor of officers where plaintiff presented no evidence that any particular officer was responsible for the damage alleged).

3

In a last-ditch effort to shirk their evidentiary burden,[1] Plaintiffs argue that because Sheriff McVicker "was present when the property was damaged, the burden of proof is on McVicker to prove that he was not the one who caused the damage." (DE-97, p.17.) This is not true. Colbert, 851 F.3d at 659 (rejecting argument that burden of production should be shifted to the officers to "show that they did not cause any property damage" because "proximity to a wrongdoer does not authorize punishment"). Plaintiffs cite the Restatement (Second) of Torts § 433B, which has only been applied by Fourth Circuit courts in environmental liability cases, yet they fail to satisfy § 433B's requirement that they prove the damage was caused "by only one of [the defendants]." Again, there is no evidence of excessive damage or that Sheriff McVicker or Deputy Deaver damaged the identified interior property when, like Colbert and Molina, other officers were present during the searches.

Like Molina, Plaintiffs point only to Sheriff McVicker's limited presence at the searches as evidence that he destroyed the property. Presumably, they claim Sheriff McVicker destroyed all of the following "property located inside" the stores: a window decal, computer wiring, magnetic door locks, coaxial cables, and water hoses. (DE-97, p.16.) Plaintiffs also contend that water and fire damage occurred "inside the stores as a result of harm done to the structure" during removal of wires. (Id.)

While it is not disputed that the window decal was removed during execution of the search warrants, there is no evidence that Sheriff McVicker or Deputy Deaver removed the window decal.

It is disputed that the interior computer wiring, magnetic security locks, coaxial cables, and water hoses were destroyed during the searches. The only evidence to support the allegation that these materials were destroyed during the searches is Mr. Smith's self-serving statements.[2] In any event, assuming

---

[1] The Court should give short shrift to Plaintiffs' (1) accusation of a "blue wall of silence and denial," (2) insinuation that the entire purpose for securing the crime scene was to prevent the public from viewing Sheriff McVicker's alleged destruction of Plaintiffs' property, and (3) remark that "one wonders whether Defendants would even have admitted that Deaver was the deputy on the roof" had Plaintiffs not identified Deputy Deaver. (DE-97, p.15, n.6.) These fanciful theories are undermined by the fact that Sheriff McVicker and Deputy Deaver identified Lieutenant Johnson in their discovery responses as the officer who broke the "wooden table" while climbing atop it to remove a monitor, and Downie Dallas as the locksmith who accessed the safes.

[2] Plaintiffs invoke the doctrine of *res ipsa loquitur*, but this is unavailing because (1) in the context of § 1983 claims, *res ipsa loquitur* has only been applied to medical malpractice cases; (2) it still relies on Mr.

4

*arguendo* that these items were damaged during the execution of the search warrants, there is no evidence that Sheriff McVicker or Deputy Deaver cut these wires. In addition, this damage, along with the window decal, does not rise to the level of a Constitutional violation as discussed in Section 1.B.

As for the alleged water damage and the fire damage, Plaintiffs cannot demonstrate causation. The fire damage occurred days after Sheriff McVicker and Deputy Deaver had left the property, and the Fire Marshall was unable to determine the cause of the fire. (DE-94-18, ¶7.) The alleged water damage is even more attenuated and Plaintiffs have not identified when it allegedly occurred. Moreover, Mr. Smith visited the stores "minutes after the raids were concluded, secured the stores and began inspecting the damage to them," thus breaking the chain of proximate cause because preventing subsequent damage was within his control. (DE-98, ¶13.)

Nor can Sheriff McVicker be liable on grounds of supervisor liability. Plaintiffs argue that Sheriff McVicker instructed officers to "take everything f****** thing out," but this double hearsay evidence cannot create a genuine dispute because (1) Chad Britt testified that Sheriff McVicker never gave any such instruction and (2) Chad Britt did not attend the pre-search briefing at which Sheriff McVicker allegedly made this statement. (McVicker Dep. 111:20-113:21, 117:18-118:5; Britt Dep. 13:5-15:11; 24:19-26:17.) Plaintiffs also beg this Court to disregard the pre-search memorandum's instruction to "be professional." However, "[w]hile the summary judgment standard requires [courts] to resolve conflicting inferences from circumstantial evidence in favor of the non-moving party, it does not allow [courts] to ignore or distort the plain meaning of words or conveniently to read them out of context." Sylvia Dev. Corp. v. Calvert Cty., 48 F.3d 810, 821–22 (4th Cir. 1995). And while at the scene, Sheriff McVicker observed no destruction of property and thus cannot be liable in his supervisory capacity. Hall v. Burney, 2013 WL 4828570, at *5 (E.D.N.C. Sept. 10, 2013), aff'd, 561 F. App'x 293 (4th Cir. 2014) ("Where, as

---

Smith's self-serving statements; and (3) the doctrine applies when the "only inference remaining is that the fault was the defendant's," which is not the case here due to the presence of other officers and Mr. Smith's subsequent access. Jenkins-Bey v. Land, No. 5:09-CT-3103-FL, 2010 WL 3672285, at *7 (E.D.N.C. Sept. 20, 2010) (citation omitted).

5

here, a plaintiff has failed to offer any evidence of . . . a supervisor's knowledge that an officer 'engaged in conduct that posed a risk of constitutional injury,' summary judgment is appropriate.").

In short, the factual record mandates the simplest conclusion: Sheriff McVicker did not destroy Plaintiffs' property or otherwise violate their Constitutional rights.

### B. Deputy Deaver Did Not Violate Any Of Plaintiffs' Constitutional Rights And Acted Reasonably At All Relevant Times.

Plaintiffs claim that it was unreasonable for Deputy Deaver to remove LED lighting, and that Deputy Deaver caused damage to (1) the stucco when removing security cameras, (2) the PVC pipe conduit when pulling wires, (3) a portion of the LED lighting track, and (4) wires. (DE-97, p.19.) Other than Mr. Smith's self-serving statements, there is no evidence that Deputy Deaver cut wires or that he damaged the PVC pipe conduit. Nor is there evidence that the LED lighting is even damaged.

Nevertheless, even if Deputy Deaver caused the alleged damage, "at most, plaintiff's allegations could be construed as negligence, and alleged negligence [sic] conduct is insufficient to state a § 1983 claim." Bradshaw v. Willie, 2016 WL 1180190, at *2 (E.D.N.C. Mar. 25, 2016); Ferrell v. Lewis, 2013 WL 12114471, at *3 (E.D.N.C. Apr. 9, 2013) ("[N]egligence in disrupting or damaging plaintiff's personal property during the search of [their] belongings is simply insufficient to sustain a claim under § 1983") aff'd, 529 F. App'x 346 (4th Cir. 2013). "[T]o allow claims based on theories of negligence would 'trivialize the centuries-old principle of due process of law" because "negligent acts by state officials involve no affirmative abuse of governmental power—which is, after all, what the Due Process Clause was meant to prevent." Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995) (citation omitted).

The alleged damage does not "shock the conscience" or rise to the level of a violation of Plaintiffs' constitutional rights. See e.g., Chumley v. Miami Cty., Ohio, 2015 WL 859570, at *11 (S.D. Ohio Feb. 27, 2015) (holding that cutting locks and breaking latches off of trailers, damaging roll-up door on a truck, damaging door frame and lock on pump house, and leaving house in "disarray" after search did not amount to a constitutional violation); Soichet v. Toracinta, 111 F.3d 124 (2d Cir. 1997) (affirming summary judgment for defendants where plaintiff claimed that officers "ransacked" the apartment and

6

"destroyed antique furniture" and a phone cord); Dockery v. Tucker, 2008 WL 2673307, at *10 (E.D.N.Y. June 26, 2008) (holding that "destruction of two toilets and some electrical fixtures" did "not state a claim of constitutional magnitude"); Williams v. Alford, 647 F. Supp. 1386, 1392 (M.D. Ala. 1986) (holding that holes knocked in wall, destruction of stereo, and trash dumped out and not cleaned up did "not state a violation of constitutional magnitude"), aff'd, 829 F.2d 1130 (11th Cir. 1987); United States v. Neth, 2010 WL 1257695, at *12 (M.D. Fla. Mar. 30, 2010) (holding that damage to door frame, removal of items from cabinets and drawers and left about the residence, upended cushions, and turned over garbage cans left in the yard did "not state a violation of constitutional magnitude"); Brown v. City of Utica, N.Y., 854 F. Supp. 2d 255, 262–63 (N.D.N.Y. 2012) (holding that "a cracked glass cabinet door, a closet door off its hinges, garbage strewn outside the home, clothing scattered on the floor inside the home, a radiator with its metal covering removed, and what appears to be a broken mirror or glass picture frame . . . falls far short of establishing" unreasonable or malicious conduct).

"Reasonableness . . . is judged from the perspective of the officer at the time of the search, not with the benefit of 20/20 hindsight." Johnson v. Manitowoc Cty., 635 F.3d 331, 335 (7th Cir. 2011). Deputy Deaver was instructed to remove security cameras and reasonably believed he needed to remove the LED lighting to do so. Plaintiffs claim he could have removed the security cameras and wiring in a different manner, but Plaintiffs "cite, and we f[ou]nd, no cases requiring that officers use the least possible destructive means to execute a search warrant." Id. (holding that use of jackhammer instead of specialty saw was not unreasonable). As a result, Deputy Deaver did not violate Plaintiffs' constitutional rights, but to the extent he caused unnecessary damage, he is entitled to qualified immunity.

### C. Sheriff McVicker Is Not Liable In His Official Capacity Because Plaintiffs Identify No Policy, Practice, Or Custom.[3]

Plaintiffs argue that Sheriff McVicker "directed his deputies to cause the destruction of plaintiffs' property" and that this "direction is sufficient to constitute the act necessary to establish a policy for which liability may be imposed" against Sheriff McVicker in his official capacity. (DE-97, p.22.) As

---

[3] "Plaintiffs do not seek to hold Deaver liable in his official capacity." (DE-97, p. 12.)

7

discussed, there is no genuine dispute that Sheriff McVicker never instructed officers to "take everything f****** thing out." But even if he did, this is not a direction to destroy property. In any event, this singular statement falls far short of the showing required to establish an unconstitutional policy, practice, or custom. Thus, Plaintiffs' official capacity claim fails.

### D. Because Sheriff McVicker and Deputy Deaver Are Not Liable Under 42 U.S.C. § 1983, Plaintiffs' Declaratory Judgment Claim is Moot.

Plaintiffs concede that the "factual basis" of their declaratory judgment claim is "subsumed in their § 1983" claim. (DE-97, p.12 n.5.) The same is true for the merits. Resolution of the § 1983 claims in Sheriff McVicker and Deputy Deaver's favor thus eliminates the controversy and renders Plaintiffs' declaratory judgment claim moot.

## II. Sheriff McVicker and Deputy Deaver Did Not Convert Plaintiffs' Property.

This claim concerns only Plaintiffs' personal property, such as "wires cables, a water hose, a large art window display, and a table," and presumably the LED lighting. (DE-97, p.23.) First, there is no evidence that Sheriff McVicker or Deputy Deaver caused any damage to Plaintiffs' personal property. Plaintiffs have not tested the LED lighting in the nearly three years since its removal and thus cannot demonstrate that Deputy Deaver damaged it. Plaintiffs also list the table, yet they acknowledge the table was broken when Lieutenant Johnson climbed onto it. (DE-98, ¶35.) Second, even if Sheriff McVicker and Deputy Deaver had caused the alleged damage, the damage was reasonable pursuant to execution of the search and to hold them liable for conversion would flout the United States Supreme Court's holding in Dalia v. United States, 441 U.S. 236, 258 (1979), that "officers executing search warrants on occasion must damage property in order to perform their duty."

## III. Plaintiffs' Takings Claims Are Barred.

This Court recognized that Plaintiffs can only assert their takings claims against Sheriff McVicker and Deputy Deaver in their official capacities. Plaintiffs' takings claims are based on damage to a PVC pipe "conduit," "water and fire damage to the interior of the building, and damage to the building's exterior stucco." (DE-97, pp.23-24.) The lack of causation related to the water and fire damage

has already been addressed. To the extent the PVC pipe was damaged, which is denied, and the stucco besmirched, no Fifth Amendment taking occurred because this damage allegedly occurred during the execution of lawful search warrants. Hart v. Gordon, 591 F. App'x 125, 129 (3d Cir. 2014) ("[N]o viable Takings Clause claim occurs when property has been seized pursuant to a lawful search warrant. Instead, the limits on the police power within this context come from the Due Process Clause . . ."); Johnson v. Manitowoc Cty., 635 F.3d 331, 336 (7th Cir. 2011); AmeriSource Corp. v. United States, 525 F.3d 1149, 1154 (Fed. Cir. 2008). Plaintiffs are not unique in asserting this claim as an attempted end-around Dalia. See Zitter v. Petruccelli, 2017 WL 3393805, at *8 (D.N.J. Aug. 7, 2017) ("To the extent [plaintiff's] [takings] claim is based on the destruction of the oysters allegedly in excess of the warrant's authorization, it fails for reasons similar to" failed Fourth Amendment claim).

Plaintiffs' takings claim under the North Carolina Constitution fails because their ability to bring state claims against officers in their official and individual capacities, even if barred by governmental and public officer's immunity, constitutes an adequate remedy. DeBaun v. Kuszaj, 238 N.C. App. 36, 40–41 (2014) ("[T]hat plaintiff must overcome the affirmative defense of public officer immunity to succeed on his tort claims does not negate their adequacy as a remedy."); Hunter v. Town of Mocksville, 237 F. Supp. 3d 349, 367 (M.D.N.C. 2017) ("Adequacy is found not in success, but in chance").

**IV. Sheriff McVicker and Deputy Deaver Are Entitled To Public Officer's Immunity Because They Did Not Act With Malice.**

Plaintiffs' claims boil down to a disagreement with the "very fact that the [searches] took place." (DE-97, p.27.) This cannot constitute malice. Captain Tyler—not Sheriff McVicker or Deputy Deaver—in conjunction with the Cumberland County Sheriff's Office chose to apply for the search warrants, which resulted in a Superior Court judge ordering that the searches occur. That Bladen County's chief law enforcement officer chose to initiate the investigation after receiving complaints from the community likewise cannot constitute malice.[4] Nor does the decision not to send a target letter constitute malice.

---

[4] Plaintiffs claim there was "nothing secret about Cybernet's operations" and that "Smith was transparent about the business." (DE-97, p.27.) That is no longer the case due to Mr. Smith's invocation of the Fifth Amendment at his deposition, which included a question as to whether a demonstration would have

9

Plaintiffs also claim that the pre-search memorandum does not mean what it says, and that it is a self-serving statement. (Id.) The pre-search memorandum is a contemporaneous statement made by Captain Tyler prior to any threat of a lawsuit and its credibility speaks for itself. Though Sheriff McVicker was only present for a limited period of time at the searches, and was there only because Captain Tyler asked him to bring a storage truck to the scene, nothing prohibits the Sheriff from attending a search, or directing the execution of a search for that matter. Johnson v. Manitowoc Cty., 635 F.3d 331, 335 (7th Cir. 2011) ("[S]o long as the officer's conduct remains within the boundaries of reasonableness, an officer has discretion over the details of how best to proceed with a search warrant's execution.") (quoting Lawmaster v. Ward, 125 F.3d 1341, 1349 (10th Cir.1997)). There is no limit on the amount of officers who can be used to conduct a search. Gerena v. Pezdek, 2015 WL 9582730, at *5 (N.D.N.Y. Dec. 8, 2015) ("[T]he presence of these other individuals would not make an otherwise reasonable search unreasonable."). And even with 20 officers, the search still lasted six hours. If anything, the presence of additional officers, some from another county, and assistant district attorneys further safeguarded Plaintiffs' rights and ensured proper execution of the searches. In short, law enforcement officers—not Plaintiffs and targets of criminal investigations—have the authority to determine how to execute searches.

Because Plaintiffs' "evidence" is "hypothetical" and supported by "surmise" instead of fact, Plaintiffs failed to meet their "heavy burden" to overcome the presumption that "public officials will discharge their duties in good faith and exercise their powers in accord with the spirit of the law." Strickland v. Hedrick, 194 N.C. App. 1, 10-11 669 S.E.2d 61, 68 (2008). Sheriff McVicker and Deputy Deaver's actual actions do not demonstrate an improper motive or "wicked purpose" stemming from "hatred, ill-will, or spite" and thus they are entitled to public officer's immunity.

## **CONCLUSION**

For these reasons, Sheriff McVicker and Deputy Deaver respectfully request that their motion for summary judgment be granted.

---

revealed information different than that discovered during the investigation. (DE-94-3.) The situation is analogous to the summary judgment standard: law enforcement officers are not required to accept the self-serving statements of subjects of criminal investigations.

Respectfully submitted this the 13th day of April, 2018.

/s/ Patrick G. Spaugh
CHRISTOPHER J. GEIS, N.C. State Bar No. 25523
PATRICK G. SPAUGH, N.C. State Bar No. 49532
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
E-mail: pspaugh@wcsr.com
cgeis@wcsr.com
*Attorneys for Defendants James McVicker and Travis Deaver*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2018, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS JAMES McVICKER AND TRAVIS DEAVER** with the Clerk of Court using the CM/ECF system which will send notice to the following:

**ADDRESS(ES)**:

David J. Adinolfi II
Special Deputy Attorney General
North Carolina Attorney General's Office
114 W. Edenton Street
Post Office Box 629
Raleigh, NC 27602-0629
dadinolfi@ncdoj.com
*Attorney for Jonathan David*

William J. Brian, Jr.
Keith P. Anthony
MORNINGSTAR LAW GROUP
112 West Main Street, Second Floor
Durham, NC 27701
bbrian@morningstarlawgroup.com
kanthony@morningstarlawgroup.com
*Attorneys for Plaintiffs*

/s/ Patrick G. Spaugh
PATRICK G. SPAUGH, N.C. State Bar No. 49532
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
E-mail: pspaugh@wcsr.com
*Attorneys for Defendants James McVicker and Travis Deaver*