```
 1              THE UNITED STATES DISTRICT COURT
 2         FOR THE EASTERN DISTRICT OF NORTH CAROLINA
 3                     SOUTHERN DIVISION
 4                   NO: 7:16-CV-00016-RJ
 5
 6  _____
    CYBERNET LLC and ALADDIN REAL ESTATE, LLC,   )
 7                                               )
            Plaintiffs                           )
 8       VS.                                     )
                                                 )
 9  JONATHAN DAVID, in his personal capacity as  )
    District Attorney for the 13th Prosecutorial )
10  District of North Carolina; JAMES MCVICKER,  )
    in his personal capacity and his official    )
11  capacity as Sheriff of Bladen County, North  )
    Carolina; and TRAVIS DEAVER, in his personal )
12  capacity and his official capacity as a      )
    Deputy Sheriff of Bladen County,             )
13  North Carolina,                              )
                                                 )
14          Defendants                           )
                                                 )
15
16
17               DEPOSITION OF SCOTT LONG,
18                  (Taken by Defendant)
19              Elizabethtown, North Carolina
20                 Thursday, June 15, 2017
21
22
23
24  Reported in Stenotype by:
    Tamara Violette, PR
25  Transcript Produced by computer aided transcription
```

Page 86

1  testimony. That's the reason he said that I needed to tell
2  him what happened that day, if I could help, and I did.
3    Q. What did he tell you about the nature of that
4  lawsuit?
5    A. He didn't get in much detail. He just trying to say
6  that pretty much proving what happened there, you know, and
7  the damage done to the building. And that's the reason I'm
8  here; to talk about what I saw was done to the building and
9  who I saw that day.
10   Q. And you testified -- and this is in your words, not
11 mine -- that the only damage that you saw was the light
12 strips, is that correct?
13   A. Yes.
14       MR. ANTHONY: Object to the form.
15   A. Something was being done on the roof that I couldn't
16 see done until the damage was seen the next morning.
17 BY MR. SPAUGH:
18   Q. And the next morning you testified that Jackson went
19 on roof, right?
20   A. Yes.
21   Q. Did you go on the roof?
22   A. I did, too and I seen where the wire was coming out
23 where we had conduit and a box on top and a box underneath.
24 The conduit run through the roof. It was box underneath,
25 another breaker box that the wire was running to and as to

Page 87

1  that wire running to the side of it.
2    Q. Other than personally speaking to the unidentified
3  sheriff's officer who put out the police tape, did you hear
4  any conversations between the sheriff's deputies that day?
5    A. No, sir, no.
6    Q. Are you paying Mr. Maynard here today?
7    A. Yes.
8    Q. Are you paying him with your personal --
9    A. Yes.
10   Q. -- funds? Has Jeff Smith contributed at all to the
11 payment of your attorney's fees?
12   A. No.
13   Q. You testified earlier that Mr. Maynard represented
14 you and your father in some other actions. Can you tell me
15 what they were?
16   A. With my father I'm not really sure what he
17 represented him for. I know he represented my uncle one
18 time.
19   Q. Has he ever represented you in any --
20   A. Me personally, no. He was referred.
21   Q. How many times did you speak with Mr. Anthony when
22 you were preparing your affidavit?
23   A. We got it all in one day.
24   Q. Was there anything from that day other than the time
25 frame that you were uncertain about?

Page 88

1    A. No, just time frames. I'm not real good with time,
2  keeping up with time during the day's time because I pretty
3  much -- I got one track mind. Once I'm doing my work I do it
4  and concentrate and, you know, that's just the way I do
5  things, way I operate.
6    Q. And speaking of that one track mind and doing things
7  and concentrating, is it fair to say that you were continuing
8  your work after the sheriffs arrived that day?
9    A. No, I didn't continue working -- I stopped working
10 after they left. You talking about during the process of
11 what they were doing?
12   Q. Yeah.
13   A. I continued working a little bit. But, I was, like,
14 you know, working around there and I was distracted by what
15 was going on. So that's the reason I was taking so much time
16 walking around when I could get out. Because, to be honest
17 with you, I'm looking at, well, this might give me a half a
18 day off for some time off, a break.
19   Q. When was the last time you and Jeff Smith had
20 dinner, if ever?
21   A. Dinner? We never had dinner together.
22   Q. What about lunch?
23   A. Lunch, never had lunch together. I don't think I
24 have ever ate with him.
25   Q. Go to church together or anything?

Page 89

1    A. No. Maybe I see him at the Peanut -- I mean, the
2  Peanut Festival in Dublin, you see him there. He runs a snow
3  cone machine sometimes. I think -- now, was he with the City
4  of Dublin one time? I'm not really sure.
5    Q. I got another question for you.
6    A. Yeah.
7    Q. Is there much competition for general contracting
8  work around Elizabethtown?
9    A. Yeah, there is a lot of competition all the time. I
10 mean, pricing wise, I've been lower than everybody else in
11 the area. You got the bond and same quality work we do, we
12 could just do the work, might be smaller time frame, shorter
13 time frame. We hold our own pretty good.
14   Q. Did Jeff Smith tell you how he decided to use you
15 general contractor or Scottco, I should say?
16   A. We talked about it couple times and he knew I did
17 that kind of work. He said, well, we'll give it a try.
18   Q. When were those other times that y'all were talking?
19 Where were y'all?
20   A. We just see each other on, you know, like, maybe at
21 WalMart or be somewhere like Peanut Festival I see him.
22 That's when everybody catch up. It's right there on Main
23 Street. You see everybody walking that way because you park
24 two miles away and you walk there with your family and you're
25 trying to see everybody and speak to everybody. So you