IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:16-cv-00016-RJ

| | |
|---|---|
| CYBERNET, LLC; and ALADDIN REAL ESTATE, LLC, ) ) ) Plaintiffs, ) ) v. ) ) JONATHAN DAVID, in his personal capacity ) and his official capacity as District Attorney for ) the 13th Prosecutorial District of North Carolina; ) JAMES McVICKER, in his personal capacity ) and his official capacity as Sheriff of Bladen ) County, North Carolina; and TRAVIS ) DEAVER, in his personal capacity and his ) official capacity as a Deputy Sheriff of Bladen ) County, North Carolina, ) ) Defendants. ) ) ) | **DEFENDANTS JAMES McVICKER AND TRAVIS DEAVER'S REPLY TO PLAINTIFFS' RESPONSE TO STATED FACTS PURSUANT TO LOCAL RULE 56.1(a)(3)** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1(a)(3), Defendants James McVicker and Travis Deaver respond to Plaintiffs' statement of additional material facts as follows:

**Reply to Additional Material Facts**

1. The "mural" was a window decal depicting the Las Vegas skyline and various slot machine-style reel screens that stated "enter and win," "cash," "win prizes," and "our sweepstakes games." (DE-90-2.) The search warrants ordered the Bladen County Sheriff's Office ("BCSO") to seize "fruits and instrumentalities" related to violations of North Carolina's video sweepstakes statute. (DE-1-1, Exs. A, B.) The window decal may have also been removed because it obstructed officers' view of the outside the building. (Second App. 1, Britt Dep.

55:15-22). Deputy Deaver and Sheriff McVicker did not remove the window decal. (Second App. 2, Deaver Dep. 53:18-22; Second App. 3, McVicker Dep. 142:9-21.)

2. No wires, cords, or water hoses were cut during the execution of the search warrants. (DE-93, ¶24.)

3. Sheriff McVicker and Deputy Deaver incorporate their response to paragraph 2.

4. Sheriff McVicker and Deputy Deaver incorporate their response to paragraphs 2 and 3.

5. These items remain in BCSO's possession. (DE-94-21.) Sheriff McVicker and Deputy Deaver did not seize these items. (McVicker Dep. 154:14-155:25; Deaver Dep. 54:2-6.)

6. This entire paragraph violates Local Rule 56.1(a)(4) because there is no citation to the record, nor could there be, to support this illogical conspiracy theory.

7. Undisputed.

8. Undisputed, though Sheriff McVicker and Deputy Deaver note that Plaintiffs previously represented to the Court that they "do not challenge the lawfulness of the warrant pursuant to which the raids were conducted." (DE-19, p.5.)[1]

9. The referenced BCSO officers also acknowledged that they had not previously executed search warrants related to violations of the video sweepstakes and gambling statutes. (Second App. 4, Johnson Dep. 114:20-22; Second App. 5, Tyler Dep. 237:1-7.) Even with twenty officers to help seize items, the searches still lasted more than six hours due to the quantity of items to be seized: 88 CPUs, 113 monitors, 64 keyboards, 20 kiosks, and more. (DE-94-21, DE-97-12.) Chad Britt also noted that, generally speaking, Sheriff McVicker was more

---

[1] "The purpose of [judicial estoppel] is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." Vinal v. Fed. Nat. Mortg. Ass'n, 131 F. Supp. 3d 529, 538 (E.D.N.C. 2015).

proactive than the prior Sheriff. (Britt Dep. 47:25-48:2, 71:3-19.) Sheriff McVicker and Deputy Deaver object to every characterization of the execution of the search warrants as a "raid."[2]

10. Chad Britt overheard a discussion about "not cutting" wires. (Britt Dep. 49:7-50:6, 57:11-18.)

11. Undisputed.

12. Undisputed except for the unsupported statement that the purpose of disabling the video recording devices was "to prevent any further recording of their activities."

13. Sheriff McVicker and Deputy Deaver object to the contention that "all of the damage [Mr. Smith] identified could only have been caused by the Defendants, and nobody else." Mr. Smith was not present during the execution of the search warrants. (DE-93, ¶19.) Twenty officers were present during the execution of the search warrants, and customers and Cybernet, LLC, employees were present prior to and at the beginning of the searches. (DE-97-12; Second App. 6, Borresen Dep. 151:18-153:11.)

14. Sheriff McVicker and Deputy Deaver object to this paragraph as a violation of Local Rules 56.1(a)(2), (4).

**Reply to Plaintiffs' Response to Stated Facts[3]**

5. Plaintiffs do not dispute that Sheriff McVicker and his campaign never cashed a campaign check from Jeffrey Smith or his wife. Sheriff McVicker did not tell Mr. Smith that no

---

[2] A raid is, among other things: "1. A surprise attack by a small armed force. 2. A sudden forcible entry into a place by police." American Heritage College Dictionary (3d ed. 1997). It is undisputed that no forced or dynamic entry was made, no doors were kicked down, no weapons were drawn, no stun grenades were employed, and no physical force was used on any person. Officers just showed up, walked in the stores, and peacefully executed warrants.

[3] Sheriff McVicker and Deputy Deaver continue to rely on the entirety of their Statement of Material Facts and the evidence in support of same. Without waiving their Statement of Material Facts or admitting any facts set forth in Plaintiffs' Response to Stated Facts, Sheriff McVicker and Deputy Deaver address limited issues raised by Plaintiffs' Response to Stated Facts.

searches would occur. (McVicker Dep. 38:21-25, 43:4-12.) Mr. Smith's explanation of the games did not last longer than an hour. (McVicker Dep. 41:8-14.) The rejected check was not from Mr. Smith or his wife. (Second App. 7, Smith First Dep. 93:10-13.) Sheriff McVicker never accepted a contribution from Mr. Smith or his wife and is unaware of any campaign contribution from Mr. Smith or his wife. (McVicker Dep. 46:12-13.) Sheriff McVicker's campaign properly documented all campaign contributions and no evidence contradicts this. (McVicker Dep. 47:1-49:10.)

8. When asked whether the offered demonstration would have revealed information different than that revealed during the course of the investigation, Mr. Smith invoked the Fifth Amendment. (DE-94-3, 27:14-31:11.)

13. Plaintiffs assert that the "issue of the legality of the sweepstakes . . . had not been explained or argued to the Court,"[4] but that begs the question of how and why the court made such a comment, even if *dicta*. The answer is simple: the plaintiff in that case, represented by the same counsel as Plaintiffs in this case, devoted 4 pages of its appellee brief to the legality of the games, and 9 pages in the complaint, which was in the Record on Appeal. (Second App. 9.) The transcript of the oral argument before the Court of Appeals will also show that the games were explained to the Court of Appeals. addressing the legality of the games.

It is clear that (1) the North Carolina Court of Appeals felt compelled to say that the plaintiffs' gambling operations may be illegal, (2) after hearing arguments from the plaintiff that it was legal, and (3) the plaintiffs now claim that they never made that argument. This Court should consider Plaintiffs' representation on this issue when weighing the credibility of

---

[4] This statement was also made in another case concerning Crazie Overstock Promotions, LLC. (Second App. 8, excerpts of transcript of hearing, Crazie Overstock Promotions, LLC v. State of North Carolina, Nov. 2, 2017, pp. 223-24).

Plaintiffs' arguments made without factual support, especially those that appear to be nothing more than mudslinging designed to harm reputations and not to demonstrate a plausible violation of the Constitution.

14. Plaintiffs cite no evidence to dispute that Captain Tyler and CCSO determined there was probable cause to apply for a search warrant. Sheriff McVicker and Deputy Deaver further note that Plaintiffs previously represented to the Court that they "do not challenge the lawfulness of the warrant pursuant to which the raids were conducted." (DE-19, p.5.)

15. Plaintiffs' evidence does not refute Captain Tyler's personal belief that a court would have granted a search warrant for the Smith's house.

16. Plaintiffs' evidence does not refute that Sheriff McVicker had "no role" in preparing the search warrant applications.

17. Again, (1) Borresen's investigation revealed that he could obtain payouts from the stores without completing "dexterity tests," which were only present at Little Aladdin; (2) after being presented with explanations about the operation of the games, the Court of Appeals noted that it could certainly be argued the Little Aladdin games were illegal; and (3) Mr. Smith invoked the Fifth Amendment as to the games conducted at Big Aladdin and thus this Court may infer the games were illegal. Plaintiffs cite paragraph 14, which does not provide evidence to support Plaintiffs' claim that a Court would not have granted the search warrants had Captain Tyler copied Agent Borresen's entire report verbatim.

18. Sheriff McVicker and Deputy Deaver object to this response because it violates Local Rule 56.1(a)(4).

20. Sheriff McVicker never uttered the words "take everything f****** thing out" or any variation thereof. Randy Deaver claims that Chad Britt told him that prior to the searches,

"there was a meeting that took place, in which Sheriff McVicker instructed him and the other deputies present to 'take everything fucking thing out' of the stores when they seized the property." There were two pre-search meetings the morning of May 29, 2015. The first meeting, at which the pre-search memorandum was circulated, occurred at BCSO's facility. (McVicker Dep. 111:20-113:21.) Sheriff McVicker briefly attended this meeting (id.); Chad Britt did not attend this meeting. (Britt Dep. 13:5-15:11.) The second meeting occurred off the highway near the stores. Chad Britt attended this meeting (id.); Sheriff McVicker did not (McVicker Dep. 117:18-118:5.). In other words, on May 29, 2015, Chad Britt and Sheriff McVicker were not present together prior to the searches. And when asked to describe any comments made by Sheriff McVicker at the searches, Chad Britt testified that Sheriff McVicker instructed officers to not damage property. (Britt Dep. 24:19-26:17.) Randy Deaver was paid a substantial sum of money by Cybernet, LLC, between 2014 and 2015.[5] As to the significance of the pre-search memorandum, Lieutenant Johnson testified that he has executed 75 to 100 search warrants and that this instruction was not typical. (Johnson Dep. 35:4-14; 101:18-102:2.)

22.  Sheriff McVicker and Deputy Deaver incorporate their response to paragraph 20. Plaintiffs' evidence does not support their contention that Sheriff McVicker damaged any property, or that Deputy Deaver "caused substantial" damage to Plaintiffs' property.

25.  Sheriff McVicker and Deputy Deaver incorporate their response to paragraph 20. Sheriff McVicker was not even listed as being involved in the pre-search operation. Plaintiffs' evidence does not support their contention that Sheriff McVicker "oversaw all aspects of the execution of the search warrants," and Sheriff McVicker and Deputy Deaver object to Plaintiffs'

---

[5] Mr. Deaver's W2s for 2014 and 2015 are designated as Confidential pursuant to the Court's protective order. (DE-77.) As such, Sheriff McVicker and Deputy Deaver will file a motion to seal this information and will submit the information if the motion is granted.

characterization of what a "reasonable juror may find" as outside the scope of Local Rule 56.1(a)(2).

26. Sheriff McVicker and Deputy Deaver incorporate their response to paragraphs 20 and 25.

28. Sheriff McVicker and Deputy Deaver incorporate their response to paragraphs 20 and 25.

30. Plaintiffs' evidence does not support their contention that Deputy Deaver cut wires while on the roof at Big Aladdin. Chad Britt overheard a discussion about "not cutting" wires. (Britt Dep. 49:7-50:6, 57:11-18.)

31. Plaintiffs cite an undated, zoomed-in picture of a security camera that was *not* seized by Deputy Deaver. This evidence does not refute Deputy Deaver's testimony that the wiring for the *seized* security cameras was entangled. (Deaver Dep. 32:9-33:17.) Moreover, Plaintiffs' evidence does not support their contention that Deputy Deaver cut wires.

32. There is no evidence that the fire, which occurred days after Deputy Deaver departed, was caused by Deputy Deaver pulling wires through a conduit on the roof. (DE-94-18, ¶7.) More than 1,000 days have passed since the removal of the LED lighting, and yet Plaintiffs point to no evidence that it was damaged.

38. Plaintiffs' evidence does not support their contention that "a primary purpose for the helicopter to be present at site was to . . . make a public spectacle" or that "the helicopter was part of the effect being created for the raids." Sheriff McVicker and Deputy Deaver object to Plaintiffs' characterization of the weight of the evidence and what a reasonable juror may infer as outside the scope of Local Rule 56.1(a)(2).

39. Sheriff McVicker and Deputy Deaver object to Plaintiffs' response as to what a "reasonable juror might not believe" as outside the scope of Local Rule 56.1(a)(2).

41. Plaintiffs' evidence does not support their contention that Deputy Deaver caused the fire by pulling wires on the roof.

42. Sheriff McVicker and Deputy Deaver incorporate paragraph 13 of *Plaintiffs'* Additional Material Facts. Scott Long, a contractor for Mr. Smith who testified that the only damage he saw was the removal of the LED lighting, inspected the roof on June 1, 2015. (Long Dep. 86:10-22.)

45. Sheriff McVicker "had nothing to do with" the Smiths being charged with sixteen additional charges. (McVicker Dep. 152:4-10.)

Respectfully submitted this the 13th day of April, 2018.

/s/ Patrick G. Spaugh
CHRISTOPHER J. GEIS, N.C. State Bar No. 25523
PATRICK G. SPAUGH, N.C. State Bar No. 49532
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
E-mail: cgeis@wcsr.com
pspaugh@wcsr.com
*Attorneys for Defendants James McVicker and Travis Deaver*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2018, I electronically filed the foregoing **DEFENDANTS JAMES McVICKER AND TRAVIS DEAVER'S REPLY TO PLAINTIFFS' RESPONSE TO STATED FACTS** with the Clerk of Court using the CM/ECF system which will send notice to the following:

**ADDRESS(ES)**:

David J. Adinolfi II
Grady L. Balentine, Jr
North Carolina Attorney General's Office
114 W. Edenton Street
Post Office Box 629
Raleigh, NC 27602-0629
dadinolfi@ncdoj.com
gbalentine@ncdoj.gov
*Attorneys for Jonathan David*

William J. Brian, Jr.
Keith P. Anthony
MORNINGSTAR LAW GROUP
112 West Main Street, Second Floor
Durham, NC 27701
bbrian@morningstarlawgroup.com
kanthony@morningstarlawgroup.com
*Attorneys for Plaintiffs*

/s/ Patrick G. Spaugh
PATRICK G. SPAUGH, N.C. State Bar No. 49532
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
E-mail: pspaugh@wcsr.com
*Attorney for Defendants James McVicker and Travis Deaver*